**PRUFROCK LTD., INC., Appellee,**

v.

**Dan LASATER; Allan Roberts; Garland Streett; Dixie Management, Inc., Individually & d/b/a Spring House Restaurant, Appellants.**

No. 85–1024.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1985.

Decided Jan. 6, 1986.

Rehearing and Rehearing En Banc Denied Feb. 12, 1986.

Jerre B. Swann, Atlanta, Ga., for appellants.

Alan S. Loewinsohn, Dallas, Tex., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and HARPER,* Senior District Judge.

FAGG, Circuit Judge.

Dan Lasater, Allan Roberts, Garland Streett, and Dixie Management, Inc. (collectively Dixie Management), appeal from the portion of the district court's order that enjoins Dixie Management from using in its restaurant a trade dress confusingly similar to the trade dress Prufrock Ltd., Inc. (Prufrock) uses in its restaurants. Prufrock's action is based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). We reverse.

## I. FACTS

Prufrock operates two restaurant chains, the Black-Eyed Pea chain and the Dixie House chain. The theme, or as Prufrock terms it, the "core concept" of these chains is a "full service restaurant serving down home country cooking in a relaxed atmosphere with a full service bar." Prufrock creates this "core concept" in its restaurants with the use of various antique and country appointments and decor items, including antique bars, exposed kitchens, large open dining areas with church pew booths along the perimeter and antique drop leaf tables in the middle, antique light fixtures, small print wallpaper, and small farm and kitchen tools on the walls. Dixie Management's use of similar appointments and decor items in its country cooking restaurant is the subject of this lawsuit.

In 1978 Prufrock entered into a licensing agreement with Dixie Management under

---

* The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

which Dixie Management opened two Black-Eyed Pea restaurants in Little Rock, Arkansas, and three Black-Eyed Pea restaurants in Memphis, Tennessee. According to these agreements, Dixie Management paid licensing fees to Prufrock and Prufrock provided Dixie Management with recipes developed for the Black-Eyed Pea and Dixie House chains, along with a number of other services.

In 1984 Dixie Management tried to open a third restaurant in Little Rock, the "Spring House." Dixie Management designed the Spring House to be a more stylish version of the full service country cooking concept than either the Black-Eyed Pea or the Dixie House. Before the Spring House was officially opened, Prufrock filed a complaint against Dixie Management contending that Dixie Management had unlawfully misappropriated Prufrock's trade dress. Prufrock also requested the district court to issue a temporary restraining order enjoining the opening of the Spring House.

The district court granted Prufrock's motion for a temporary restraining order. The district court then consolidated the preliminary injunction hearing with the trial on the merits, *see* Fed.R.Civ.P. 65(a)(2). After a four day trial, the district court permanently enjoined Dixie Management from operating any restaurant, other than its existing Black-Eyed Pea restaurants, using Prufrock's "distinctive" trade dress or any trade dress confusingly similar to Prufrock's.

Dixie Management argues that the district court, by including Prufrock's "core concept" in its definition of Prufrock's trade dress, impermissibly protected Prufrock's method of doing business. Dixie Management also argues that the district court's finding that Prufrock's trade dress is distinctive and therefore nonfunctional is clearly erroneous. We agree with both of these contentions.

## II. DISCUSSION

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), upon which Prufrock bases its action, provides in pertinent part:

Any person who shall * * * use in connection with any goods or services or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

■ The district court defined Prufrock's trade dress as follows:

[A] full-service restaurant, serving down home country cooking, in a relaxed and informal atmosphere, with a full-service bar, and which employs all or any of the following items:

(a) church pews or church pew replica booth seating;

(b) small print wallpaper;

(c) antique or antique replica wooden drop leaf tables;

(d) exposed kitchen area;

(e) large open dining room with booths on side walls;

(f) antique or antique replica light fixtures;

(g) antique or antique replica bar; and

(h) country wall decor including old or antique kitchen implements, small farm implements, photographs, quilts and the like.

*Prufrock, Ltd. v. Lasater*, No. LR–C–84–944, slip op. at 9 (E.D.Ark. Dec. 18, 1984).

The district court's definition of Prufrock's trade dress includes the "core concept" of Prufrock's restaurant; "a full-service restaurant, serving down home country cooking, in a relaxed and informal atmosphere, with a full-service bar." We agree with Dixie Management that the district court's inclusion of Prufrock's "core concept" in its definition of Prufrock's trade dress was error.

■ A franchisor does not have a business interest capable of protection in the

mere method and style of doing business. *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 243 (8th Cir.1977). To allow Prufrock to protect its country cooking concept under section 43(a) of the Lanham Act would allow it to appropriate the country cooking concept to the exclusion of all others. *See Häagen-Dazs, Inc. v. Frusen Glädje' Ltd.,* 493 F.Supp. 73, 75 (S.D.N.Y. 1980). "It would be ludicrous * * * to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of [a] marketing approach to enhance consumer reception of its product." *Id.*

The concept of informal country dining is merely the method Prufrock has chosen to market its restaurant services. Indeed the record reveals that many other restaurants use this same concept. Prufrock argues that Dixie Management can use the country cooking concept as long as it does not use any other element of Prufrock's trade dress. Regardless of whether the other listed elements of Prufrock's trade dress can be protected, the district court committed error by including Prufrock's core concept in its definition of Prufrock's trade dress. Prufrock simply cannot preclude Dixie Management from entering the "down home country cooking" restaurant business.

We must now address whether Prufrock can protect the eight listed appointments and decor items, by themselves or in combination, under section 43(a) of the Lanham Act.

█ Section 43(a) can be used to protect a restaurant's trade dress from confusingly similar imitations. *The Warehouse Restaurant, Inc. v. The Customs House Restaurant, Inc.,* 217 U.S.P.Q. 411, 418 (N.D. Cal.1982), *appeal dismissed,* 726 F.2d 480 (9th Cir.1984). *See also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 225 U.S.P.Q. 133 (D.Ariz.1984); *Freddie Fuddruckers, Inc. v. Ridgeline, Inc.,* 589 F.Supp. 72 (N.D.Tex. 1984); *Associated Hosts of California, Inc. v. Moss,* 207 U.S.P.Q. 973 (W.D.N.C. 1979).

The trade dress of a product "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980 (11th Cir.1983). A restaurant's trade dress can include the shape and general appearance of the exterior of the restaurant, *Warehouse Restaurant,* 217 U.S.P.Q. at 419; *Associated Hosts of California,* 207 U.S.P.Q. at 974, 976, the identifying sign, *Warehouse Restaurant,* 217 U.S.P.Q. at 419, the interior floor plan, *Associated Hosts of California,* 207 U.S. P.Q. at 976, the appointments and decor items, *Warehouse Restaurant,* 217 U.S. P.Q. at 419; *Associated Hosts of California,* 207 U.S.P.Q. at 974, 976; *T.G.I. Friday's, Inc. v. International Restaurant Group, Inc.,* 405 F.Supp. 698, 708 (M.D.La. 1975), *aff'd,* 569 F.2d 895 (5th Cir.1978), the equipment used to serve the food, *Fuddruckers,* 225 U.S.P.Q. at 135; *Ridgeline,* 589 F.Supp. at 74; *Warehouse Restaurant,* 217 U.S.P.Q. at 419, and the servers' uniforms, *Associated Hosts of California,* 207 U.S.P.Q. at 974.

█ Prufrock can obtain protection for its trade dress under the Lanham Act if its trade dress is nonfunctional, has acquired a secondary meaning, and Dixie Management's imitation of it creates a likelihood of confusion in consumers' minds as to the origin of the services. *Truck Equipment Service Co. v. Freuhauf Corp. (TESCO),* 536 F.2d 1210, 1217–21 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *see also John Harland,* 711 F.2d at 980–81.

█ The district court specifically found that Prufrock's trade dress had satisfied these three prerequisites to protection under the Lanham Act. These are findings of fact subject to the clearly erroneous standard of review. *TESCO,* 536 F.2d at 1218–19 (finding of nonfunctionality subject to clearly erroneous standard); *Brooks Shoe Manufacturing Co. v. Suave Shoe Corp.,* 716 F.2d 854, 860 (11th Cir.1983) (secondary meaning is a question of fact); *WSM, Inc.*

*v. Hilton,* 724 F.2d 1320, 1329 (8th Cir. 1984) (likelihood of confusion in trademark infringement cases is a question of fact— test for likelihood of confusion in trademark infringement cases and section 43(a) cases essentially the same, *see Black Hills Jewelry Manufacturing Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 n. 7 (8th Cir.1980)). We hold that the district court's finding that Prufrock's trade dress is nonfunctional is clearly erroneous.

██ Dixie Management's imitation of Prufrock's trade dress may be actionable if the trade dress is nonfunctional. But if the trade dress is functional, Prufrock will not be entitled to relief under section 43(a). *TESCO* states the test in this circuit for determining whether Prufrock's trade dress is nonfunctional:

> If the particular feature is an important ingredient in the commercial success of the product, the interests in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*TESCO,* 536 F.2d at 1217–18 (quoting *Bliss v. Gotham Industries,* 316 F.2d 848, 855 (9th Cir.1963)). In short, Prufrock's trade dress is nonfunctional if it is an arbitrary embellishment primarily adopted for purposes of identification and individuality. But if the trade dress is an important ingredient in the commercial success of the product, it is clearly functional.

The requirement of nonfunctionality ensures that in our free enterprise system, the ability to compete through imitation is not unduly hampered. We recognize that "[t]he line between functionality and nonfunctionality is not * * * brightly drawn"

and that some designs capable of protection under the Lanham Act may also perform a utilitarian function. *TESCO,* 536 F.2d at 1218. However, "[t]he question in each case is whether protection against imitation will hinder the competitor in competition." *Id.* If an element of the trade dress is unrelated to the consumer demand for the product and serves merely to identify the source of the product, then a prohibition against imitation will not hinder honest competition. For example, prohibiting a restaurant from imitating another's distinctive and identifying logo will not hinder competition. *See Warehouse Restaurant,* 217 U.S.P.Q. at 420 (district court enjoined defendant's use of a logo that was confusingly similar in appearance to plaintiff's). However, prohibiting a restaurant from using an exposed kitchen will hinder competition because watching the food preparation can be part of the consumer appeal for the food service product. "A restaurant should not be able to monopolize functional components which improve the usefulness, efficiency, or appeal of the product or service." *Fuddruckers,* 225 U.S.P.Q. at 134. "Early comers may not exclude latecomers. One may not welcome new competition, but one may not legally complain of it." *Industria Arredamenti Saporiti v. Charles Craig Ltd.,* 725 F.2d 18, 20 (2d Cir.1984).

The district court found that Prufrock's trade dress was nonfunctional because "the functional aspects [of the trade dress] are incidental" and because "the particular elements of the trade dress were chosen to establish distinctiveness and individuality." *Prufrock,* No. LR–C–84–944, slip op. at 5. This finding is clearly erroneous.

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)). After carefully reviewing the entire record,

we are convinced that a mistake has been made. All of the evidence presented, including the testimony presented by Prufrock, describes a functional trade dress.

Mr. Richardson, Prufrock's Vice President of Systems and Services, testified on direct examination for Prufrock that the sole reason Prufrock uses the various appointments and decor items is to "enhance our down home country look" and to "give the customer that country feel." Mr. Richardson testified that Prufrock uses the exposed kitchen to entertain the customer as well as to show the customer the high quality of Prufrock's food preparation. According to Mr. Richardson, the large open dining area serves the purpose of allowing the customers to see the activity of the restaurant. Indeed, Prufrock states in its brief that all of the trade dress elements were chosen to portray the down home country look to Prufrock's customers.

As Dixie Management states in its brief, "it would be difficult to invent evidence more supportive of a finding that decor items were selected for and serve a functional purpose. They have a 'clear commercial appeal.'" The district court's finding that Prufrock's trade dress is distinctive has no support in the record and thus we find it to be clearly erroneous.

The consumer demand for the concept of "down home country cooking" includes the demand for the trade dress that creates the concept. Dixie Management and others would be severely handicapped in their ability to compete with Prufrock in the field of country cooking if they were prohibited from using any or all of Prufrock's trade dress. The *TESCO* test for nonfunctionality does not permit Prufrock to protect the trade dress which creates the informal country dining concept and which is an "important ingredient in the commercial success" of the concept. *TESCO*, 536 F.2d at 1217. Prufrock may not welcome competition from Dixie Management, but Prufrock cannot legally complain of it.

We do not hold that a restaurant may never protect an element of its trade dress.

Elements of the trade dress which do not relate to the concept or theme of the restaurant or which do not enhance consumer appeal for the food, *see Fuddruckers*, 225 U.S.P.Q. at 134, may be capable of protection under the Lanham Act. For example, in *Warehouse Restaurant*, 217 U.S.P.Q. at 419, the district court granted protection to a Polynesian restaurant's use of dining booths enclosed in large packing crates because the packing crates were not part of the Polynesian theme. The crates were not used to alert customers that they were entering a Polynesian restaurant but rather as a unique identifier of the restaurant.

However, any element of a restaurant's trade dress that advances the concept cannot be protected because those elements are related to the consumer demand for the concept. *Cf. id.* If a trade dress that creates a chosen theme or concept could be protected, then others who wished to use the same concept would be severely limited in their ability to do so. Indeed, by protecting the trade dress that creates the concept, this court would be protecting the concept itself. As stated earlier, Prufrock cannot use section 43(a) to protect its interest in the core concept. Prufrock is therefore not entitled to appropriate for itself a combination of features that is compatible with its "core concept." Instead, "the interest in free competition permits [their] imitation." *TESCO*, 536 F.2d at 1217.

The portion of the district court's order enjoining Dixie Management from using Prufrock's core concept and any or all parts of Prufrock's trade dress is reversed.