**SWISHER MOWER & MACHINE CO., INC., Plaintiff**

v.

**HABAN MANUFACTURING, INC., Defendant.**

**No. 95–1141–CV–W–1.**

United States District Court, W.D. Missouri, Western Division.

June 7, 1996.

---

Mark E. Brown and Gerald M. Kraii, Litman, McMahon & Brown, Kansas City, MO, for plaintiff.

William Bruce Day, Bruce A. Mahoney, Jr., Stinson, Mag & Fizzell, Kansas City, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Pending before the Court is the motion of Defendant Haban Manufacturing, Inc. ("Haban") for summary judgment. Said motion together with Haban's suggestions in support, the brief in opposition of Plaintiff Swisher Mower & Machine Company, Inc. ("Swisher"), Haban's reply suggestions and all accompanying exhibits and affidavits were reviewed by the Court. After due consideration of the above, for the reasons set forth below, the Court finds that Haban is entitled to summary judgment.

### I. Standard for Summary Judgment

A movant is entitled to summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure Rule 56(c). The moving party bears the burden of proof. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party must be given the benefit of all reasonable inferences. *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.,* 950 F.2d 566, 569 (8th Cir. 1991).

### II. Factual Background

This is an action for trade dress infringement and common law unfair competition in which Swisher claims that Haban, in designing the Haban Model 614–001 tow-behind mower, copied the trade dress of Swisher's T–40 tow-behind mower in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Missouri common law.

Swisher has produced and sold its Model T–40 tow-behind mower since approximately 1985. In 1995, Haban's Director of Engineering, Donald Wittkowski, was commissioned to begin creation of a tow-behind mower that would be competitive with the Swisher T–40. Mr. Wittkowski was directed to construct a prototype model in time for the International Lawn, Garden, and Power Equipment Exposition, which was to be held in Louisville, Kentucky in late July of 1995. Mr. Wittkowski did construct a prototype ("Haban's Prototype Mower") that was displayed and offered for sale at the Louisville Exposition. *Haban Ex. L, Swisher Ex. B.1.* However, Haban received no offers to purchase this prototype and no other mowers of that particular design were manufactured.

After the Louisville Exposition, Mr. Wittkowski made several changes to the design of the Prototype Mower. These changes resulted in the creation of the Haban Model 614–001 tow-behind mower, the unit that is currently being sold by Haban. While the Haban Model 614–001 is at the heart of this controversy, Swisher also maintains that Haban's Prototype Mower infringes on the Swisher T–40. *Swisher's List of Disputed Material Facts,* at 12, ¶ 35. However, Swisher admits that Haban has never received an offer to buy the Prototype Mower and no other mowers of that design were

ever manufactured. *Swisher's List of Disputed Material Facts*, at 6, ¶ 17. The parties have agreed to stay formal discovery pending resolution of the instant motion.

### III. Discussion

■ A product's trade dress is the total image of the product, the overall impression created rather than the individual features. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir.1994). A claim for trade dress infringement under Section 43(a) of the Lanham Act requires proof of three essential elements: (1) that the plaintiff's trade dress is primarily non-functional; (2) that the trade dress is inherently distinctive or has acquired secondary meaning; and (3) that an imitation of the trade dress would create a likelihood of confusion in the consumers' minds as to the origin or source of the product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir.1986). An unfair competition claim under Missouri common law has the same elements. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1331, n. 6 (8th Cir.1984).

■ At the outset, the Court notes that only one Haban Prototype Mower was ever manufactured and it was never sold, yet Swisher contends that it infringes on the Swisher T–40. The Court finds that the general maxim *de minimis non curat lex*—that is, the law does not care for trifling matters—is applicable to Swisher's infringement claim with regard to the prototype. *See Knickerbocker Toy Co. v. Azrak–Hamway Int'l, Inc.*, 668 F.2d 699, 702–03 (2d Cir.1982) (dismissal of copyright infringement claim upheld where allegedly infringing toy display card was merely a sample that was never sold). Consequently, the Haban Prototype Mower will not be considered and the Court's analysis will be directed only to the Haban Model 614–001.

#### A. Functionality

■ The Eighth Circuit has adopted the following test for functionality:

[i]f the particular feature is an important ingredient in the commercial success of the product, the interests in free competition permits [sic] its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is **a mere arbitrary embellishment,** a form of dress for the goods **primarily adopted for purposes of identification and individuality** and, hence, unrelated to basic consumer demand in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

*Aromatique*, 28 F.3d at 873 (emphases added). Absent a patent, functional details are free for any competitor to copy in its own products. *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1217 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). Notably, the Swisher T–40 mower at issue in this case is not the subject of any United States or foreign patent. *Swisher Ex. D*, Aff. of Wayne Swisher, ¶ 6. Hence, even if Haban set out to copy the Swisher T–40 intentionally, Swisher has no recourse if its mower design is functional and, therefore, not protectable. *See Deere & Co. v. Farmhand, Inc.*, 560 F.Supp. 85, 91, 95 (S.D.Ia.1982), *affirmed*, 721 F.2d 253 (8th Cir.1983).

■ Haban's Director of Engineering, Donald Wittkowski, states in his affidavit that each of the features of the Swisher T–40, with the exception of its red color and Swisher logo, are functional or structural details. *Haban Ex. A.* In rejoinder to Haban's functionality argument, Swisher relies primarily on the fact that various alternative trailer mower designs are available. However, the existence of alternative designs is of little relevance under the Eighth Circuit test articulated in *Aromatique.* "Merely because there are other shapes and designs which defendants could use and still produce a workable product, the design used is thereby not nonfunctional." *Deere & Co.*, 560 F.Supp. at 96 (citing *Keene Corp. v. Paraflex Industries, Inc.*, 653 F.2d 822, 827 (3d Cir. 1981)).

■ In arguing that the various components of the T–40 mower are not functional,

Swisher references the affidavit of Max Swisher, the designer of the T–40. *Swisher Ex. A.* However, his affidavit focuses almost exclusively on alternative designs. Nowhere does he suggest that any of the individual features of the T–40 are nonfunctional. Likewise, the affidavit of Wayne Swisher fails to controvert Haban's arguments. He claims that the following features of the Swisher T–40 are nonfunctional:

a) rectangular configuration of the mower deck;

b) shape of the platform;

c) location of the discharge chute;

d) number of hinges;

e) wheel size;

f) engine position;

g) shape of the drawbar; and

h) location of the drawbar mounting plates;

Again, Swisher's only support for the purported nonfunctionality of these features is the fact that alternative designs are available. *Swisher Ex. D,* Aff. of Wayne Swisher, ¶¶ 8–16. As noted above, the shape of a particular feature is not automatically considered an arbitrary embellishment merely because an alternative design exists.

In addition, Mr. Wittkowski states that use of the alternative designs suggested by Swisher would result in increased costs and changes in function. *Suppl. aff. of Donald Wittkowski,* ¶¶ 3–7. More importantly, Swisher has produced no evidence to suggest that any of the T–40's individual features, or its overall appearance, were designed to be arbitrary embellishments chosen for purposes of identification. Local Rule 13(G)(1) provides that all facts presented by the party moving for summary judgment shall be deemed admitted unless specifically controverted by the opposing party. Swisher has failed to controvert Haban's assertion that Swisher's design of the T–40 was based solely on sound engineering principles.

The only support Swisher provides for a possible finding of nonfunctionality is its contention that the overall design of the T–40 was intended to resemble the Swisher Ride King riding mower. Wayne Swisher states that "[t]he Swisher riding lawn mowers incorporate much of the same appearance as the Swisher trailmower in issue, with the intention of developing a recognizable trade dress based upon the configuration of related products." *Swisher Ex. D,* Aff. of Wayne Swisher, ¶ 7. Max Swisher suggests that the T–40 incorporates the overall appearance of the Ride King mower, including the general shape of the cutting deck and platform, the mounting and location of the engine, and the general shape of the discharge chute. *Swisher Ex. A,* Aff. of Max Swisher, ¶ 5.

■■■ Before an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or nonfunctional. *Textron, Inc. v. U.S. Int'l. Trade Comm'n.,* 753 F.2d 1019, 1025 (Fed.Cir.1985). The only overall resemblance between the Swisher T–40 and the Swisher Ride King mowers is the use of the color red and the Swisher logo. *Swisher Exs. A.1, E.* The existence of these scant similarities does not by itself demonstrate that the overall trade dress of these separate Swisher products is nonfunctional.

In summary, none of the individual features of the T–40 can properly be classified as mere arbitrary embellishments adopted for purposes of identification and individuality. Furthermore, the overall trade dress of the T–40 cannot be considered arbitrary or nonfunctional. Thus, Swisher has failed to make a showing adequate to establish the existence of a material factual dispute with regard to functionality. Consequently, summary judgment is warranted.

### B. Distinctiveness

"A distinctive trademark is one that is capable of identifying the source of goods because it is either inherently distinctive or, if not inherently distinctive, has acquired secondary meaning." *Aromatique,* 28 F.3d at 869. As an alternative basis for its holding, the Court finds that the trade dress of the Swisher T–40 is not inherently distinctive and has not acquired secondary meaning.

### 1. Inherent Distinctiveness

■■■ "In determining whether a design is arbitrary or distinctive this court has looked to whether it was a 'common' basic shape or

design, whether it was unique or unusual in a particular field, [or] whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods...." *Seabrook Foods, Inc. v. Bar–Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A.1977). The Court finds that the trade dress of the Swisher T–40 is not unique or unusual in the field of tow-behind mowers. *Compare, Haban Ex. H* (Bush Hog trailer mower); *Haban Ex. I* (ArcEase trailer mower); *Swisher Ex. A.4* (Cycle Country Quicksilver mower); *Swisher Ex. A.6* (Cycle Country Rough Cut mower); *Swisher Ex. A.9* (Befco Finishing Mower). The design of the Swisher T–40 simply does not make such an impression that one would assume Swisher to be the source of the mower upon seeing a similar design on other mowers.

Furthermore, the individual features of the Swisher T–40 are not the sort of arbitrary shapes that have been held protectable as trademarks. *Compare, In re Days–Ease Home Products Corp.,* 197 U.S.P.Q. (BNA) 566 (1977) (container for liquid drain opener shaped to resemble a drain pipe); *In re International Playtex Corp.,* 153 U.S.P.Q. (BNA) 377 (1967) (package for baby pants shaped like an ice cream cone). Therefore, to satisfy the second element of its claim under Section 43(a), Swisher must demonstrate that its trade dress has acquired secondary meaning.

### 2. Secondary Meaning

In determining whether there is secondary meaning, the chief inquiry is whether in the consumer's mind the trade dress has become associated with a particular source. *See Aromatique,* 28 F.3d at 871. Consumer surveys and testimony from consumers may be the only direct evidence of secondary meaning and should be considered in determining whether a mark has acquired such meaning. *Id.* at 871. No such evidence has been presented here. The Court recognizes that no formal discovery has yet been undertaken, however, in its suggestions in opposition, Swisher makes absolutely no argument with regard to either distinctiveness or secondary meaning. In fact, Swisher

scarcely addresses these issues at all. Thus, Swisher has not presented a material issue of fact as to whether the trade dress of the T–40 has become particularly associated with Swisher.

The existence of secondary meaning may also be inferred from evidence of deliberate copying of a trademark. *Id.* Swisher has presented no evidence of deliberate copying. However, even if the Court assumes that Haban intentionally copied Swisher's design, summary judgment is not precluded. "Where there is a demand for a type of product, capitalizing on that demand by copying that product does not necessarily indicate that the original product has secondary meaning." *Id.* In *Aromatique,* the court determined that the defendant had deliberately copied certain of the plaintiff's products. Nonetheless, the court held that the copying could not support an inference that plaintiff's trademarks had acquired secondary meaning because the defendant's products prominently featured the defendant's own trademarks and label. *Id.* at 871.

Similarly, the copying alleged in this case cannot support an inference of secondary meaning. Haban's name and logo are prominently displayed on its Model 614–001 mower. In addition, the silver color of the Haban Model 614–001 is very distinct from the red on the Swisher T–40. These conspicuous differences must be seen as attempts by Haban to distinguish its mower from the Swisher T–40. *See Aromatique,* 28 F.3d at 871. *Accord L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1133–34 (Fed.Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). Therefore, no secondary meaning may be inferred from Haban's alleged copying.

At bottom, no reasonable juror could find that the trade dress of the Swisher T–40 is inherently distinctive or has acquired secondary meaning. Accordingly, summary judgment must be entered in favor of Haban.

### C. Likelihood of Confusion

The third element of a trade dress infringement action under Section 43(a) of the Lanham Act is likelihood of confusion. As an alternative basis for its holding, the

Court finds as a matter of law that there is no likelihood that consumers will confuse the Swisher T–40 with the Haban Model 614–001.

 The touchstone of an action under Section 43(a) is whether the defendant's actions are likely to cause confusion among consumers. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 923 (Fed.Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996). The Eighth Circuit has set forth several factors relevant to an analysis of likelihood of confusion:

1) the strength and distinctiveness of the established trade dress;

2) the similarity of the trade dress, based on examination of the products as a whole;

3) the competitive closeness of the products;

4) the alleged infringer's intent to pass off its goods as those of another;

5) incidents of actual consumer confusion; and

6) whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion.

*SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980). None of these factors alone is dispositive and excessive weight should not be placed on any one factor to the exclusion of others. *See ConAgra, Inc. v. George A. Hormel & Co.*, 990 F.2d 368, 371 (8th Cir.1993); *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 504 (8th Cir.1987).

#### 1. Strength and Distinctiveness of the Trade Dress

Swisher has marketed and sold its T–40 mower since 1985. *Swisher Ex. A*, Aff. of Max Swisher, ¶ 7. However, the relative strength of the T–40's trade dress is not clear from the summary judgment record.

#### 2. Similarity of Trade Dress

 When the trade dress of two products is visually dissimilar such that an average consumer could not be confused, summary judgment is required. *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 121 (8th Cir.1987). From a distance, the mowers in question look somewhat similar and can be generally identified as tow-behind mowers. However, even a cursory closer inspection reveals numerous differences. After review of the materials submitted by the parties, the following differences between the Haban Model 614–001 and the Swisher T–40 are readily apparent:

1) most notably, the Haban mower is silver in color whereas the Swisher mower is red;

2) the companies' distinctive logos and names are prominently displayed on the discharge chutes of the respective mowers;

3) to adjust the height of the deck, Haban's mower is equipped with a large pair of adjustable metal straps for each wheel ("Sure Set Height Adjustment"), whereas Swisher utilizes a screw-type height adjustment;

4) the Haban mower has only one pair of drawbar mounting plates located directly in front of the engine, whereas the Swisher mower has two pairs of mounting plates located on either side of the engine;

5) the discharge chute on the Haban mower is attached by two plate-type hinges, one of which is spring loaded, as compared to the Swisher mower, which employs three hinges of a different design;

6) the Swisher mower platform is red and contains four air vents, whereas the Haban mower platform is black and silver and contains no air vents;

7) the wheel guards affixed to the sides of the deck of the Haban mower have curved leading edges and are enclosed, whereas the Swisher wheel guards are neither curved nor enclosed;

8) the front end of the Haban mower deck is curved, unlike the Swisher mower; and

9) the anti-scalp roller on the Swisher mower consists of four small wheels, whereas Haban employs one large, cylindrical roller.

However, in evaluating similarity, a side-by-side comparison will not suffice; rather, a realistic recreation of the market setting is necessary. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir.1983). Swisher claims it is likely that the Haban Model 614–001 could be viewed as a private label model of the Swisher T–40. *Swisher's Suggestions in Opposition*, at 20. The Court disagrees. The rough similarity in the general shape of the two mowers is not enough to create a likelihood of confusion. *See Black & Decker, Inc. v. North American Philips Corp.*, 632 F.Supp. 185, 193 (D.Conn. 1986).

As noted above, there are significant differences in the trade dress of the two mowers, most notably, their distinctive colors and prominent display of their respective companies' names and logos. Based on these two differences alone, reasonable consumers and dealers reacting to normal market conditions can easily distinguish the Haban Model 614–001 from the Swisher T–40. Furthermore, when the mowers' numerous other differences are factored into the equation, the overall trade dress of the two mowers is so visually dissimilar that the average consumer would not be confused. After comparing the two mowers and their constituent elements, the Court holds that no reasonable juror could find that the overall trade dress of these two mowers is substantially similar.

### 3. Competitive Closeness

It is undisputed that the two mowers in question directly compete for the same group of consumers. Haban expressly acknowledges that it designed the Model 614–001 to compete with the Swisher T–40. *Haban Ex. B*, Aff. of Randolph Hamner, ¶ 3. Consequently, the degree of similarity required to prove a likelihood of confusion between the subject mowers is less than in the case of noncompetitive products. *SquirtCo*, 628 F.2d at 1091.

### 4. Intent

Intent on the part of the alleged infringer to pass off its goods as the product of another may raise an inference of likelihood of confusion. *SquirtCo*, 628 F.2d at 1091. The Eighth Circuit has stated that

[t]he most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name. When that is done, there is no basis for a charge of unfair competition.

*Venn v. Goedert*, 319 F.2d 812, 816 (8th Cir.1963). *Accord Kwik–Site Corp. v. Clear View Mfg. Co.*, 758 F.2d 167, 178 (6th Cir. 1985). The Haban logo is prominently displayed on the discharge chute of the Haban Model 614–001 mower. Haban's conspicuous placement of its name and logo must be seen as an attempt to distinguish its mower from Swisher's. *See Aromatique*, 28 F.3d at 871. In addition, Haban distinguishes its mowers by, *inter alia*, using a different color than Swisher and by affixing point-of purchase signs to its display mowers at retail outlets. *Haban Ex. B*, Aff. of Randolph Hamner, ¶ 7.

Swisher presents no evidence of Haban's intent to trade upon Swisher's good will. Moreover, Haban states that it desires only to compete fairly with Swisher and did not intend to give consumers the impression that its Model 614–001 mower was in any way associated with Swisher. *Haban Ex. B*, Aff. of Randolph Hamner, ¶ 8. There is no evidence that Haban intended to pass off its mower as one of Swisher's.

### 5. Actual Consumer Confusion

In support of this factor, Swisher submits the affidavits of Mark Ruby and Michael Burth. *Swisher Exs. B & C*. Both men own lawn equipment dealerships that sell Swisher products. At the Louisville Exposition both men saw Haban's Prototype Mower and thought that it looked very similar to the Swisher T–40. However, neither states that he was actually confused. More importantly, the Prototype Mower these men viewed at the Louisville Exposition has never been sold by Haban and is of a different design than the Haban Model 614–001 that Haban currently sells (*compare Haban Ex. C with Swisher Ex. B.1*). In addition, as dealers these men do not represent the viewpoint of the general consumer.

### 6. Degree of Care Exercised by Purchasers

"A realistic evaluation of consumer confusion must attempt to recreate the conditions in which buying decisions are made, and the court should try to determine not what it would do, but what a reasonable purchaser in market conditions would do." *Calvin Klein*, 815 F.2d at 504. Confusion is more likely to occur where the goods are relatively inexpensive because consumers typically exercise less care when making such decisions than when choosing more expensive goods. *Beer Nuts*, 711 F.2d at 941. Unlike purchasers of inexpensive products, like the soft drinks at issue in *SquirtCo*, the purchasers of the mowers in question will likely exercise a high degree of care in making their purchases because the retail cost of such mowers is roughly $750 to $1,000. Based on the type of product involved, its cost and conditions of purchase, the Court finds that consumers will exercise a high degree of care in purchasing these mowers.

After consideration of each of the *SquirtCo* factors, the Court finds, as a matter of law, that there is no likelihood the average consumer will confuse the trade dress of the Haban Model 614–001 with the Swisher T–40. Although the likelihood of confusion is normally a factual question, "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source." *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir.1984). The Court's visual inspection of the exhibits coupled with the absence of any evidence supporting an inference of likely consumer confusion is sufficient to support summary judgment for Haban.

## IV. Relief Ordered

Swisher has presented no evidence that a genuine issue of fact exists, consequently, Haban is entitled to summary judgment on Swisher's Lanham Act claims. In addition, for the same reasons set forth in the above analysis, summary judgment is also warranted on Swisher's claims brought under Missouri common law.

It is therefore ORDERED that the motion of Defendant Haban Manufacturing, Inc. for summary judgment is GRANTED.

APPENDIX

PHOTOGRAPHS OF HABAN 614-001 MOWER DEFINING ITS PARTS

Point of Purchase Sign

Wheel

Curved Wheel Guard

Curved Front End of Deck

Drawbar Mounting Plates

Anti-Scalp Roller

Tongue (Drawbar)

Wheel Attachment Brackets

Hinge

Platform

Deck

Haban Trademarks

Discharge Chute

Engine

Strap Height Adjustment

Spring Loaded Hinge

# PHOTOGRAPHS OF SWISHER T-40 MOWER DEFINING ITS PARTS

