# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 98-1179/1180

_____

| | | |
|---|---|---|
| Children's Factory, Inc., | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Benee's Toys, Inc., | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: September 21, 1998
Filed: November 17, 1998

_____

Before LOKEN, LAY and HANSEN, Circuit Judges.

_____

LAY, Circuit Judge.


Children's Factory, Inc. ("Children's Factory") appeals from a final judgment in favor of the Defendant, Benee's Toys, Inc. ("Benee"), in a trade dress infringement case brought under Section 43(a) of the Lanham Act ("Act"), 15 U.S.C. § 1125(a). Children's Factory argues the district court[1] erred in holding that its toys were not protected under the Act. Benee cross-appeals, arguing the district court erred when it

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

held that certain Children's Factory products were inherently distinctive and nonfunctional, even though these toys were ultimately found to be unprotected. For the reasons set forth below, we affirm the district court.

## I. FACTS

Children's Factory manufactures and sells vinyl-covered indoor, soft-play products for children. Children's Factory, which has been in existence for over twelve years, sells its products primarily through distributors. Benee manufactures similar products, but sells to consumers directly. The parties stipulate that they compete in the same market and their products are comparably priced. At issue is an entire line of soft-play products which Benee allegedly copied from Children's Factory. Children's Factory brought suit for trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under Missouri common law.[2] A bench trial was conducted in September 1997 and the trial court entered a judgment for Benee on both counts finding that none of Children's Factory's products were entitled to protection under the Lanham Act.

The district court divided Children's Factory's products into two groups and found both groups unprotected under the Act. The district court concluded that certain products found in paragraph 8 of its opinion ("¶ 8 products") had an inherently distinctive trade dress and were nonfunctional. The court ultimately determined, however, that these products were not protected because they were not likely to be

---

[2]Because the Missouri common law action utilizes the same elements as an action under the Lanham Act, *Swisher Mower & Mach. Co., Inc. v. Haban Mfg. Inc.*, 931 F. Supp. 645, 648 (W.D. Mo. 1996), we need discuss only the alleged Lanham Act violation.

confused with Benee's products.[3]  The district court then concluded that the products

[3]The following chart lists the products in ¶ 8 which were found to be inherently distinctive and nonfunctional, but not likely to confuse:

| Exhibit Number | Name of Children's Factory Product | Product Number |
| --- | --- | --- |
| 14a | Toddler Pyramid Play Center | CF321-035 |
| 14g | Gym Play Corner | CF352-125 |
| 14j | Soft Builder Blocks - Set A | CF321-615 |
| 14k | Soft Builder Blocks - Set B | CF 321-620 |
| 14m | Pleasure Island | US321-235 |
| 14p | ABC Soft Mini Corner | CF321-037 |
| 14q | Basic Skills Pentagon | CF332-129 |
| 14y | Sunshine Scrambler | EN800-058 |
| 14z | Kaleidoscape | EN800-057 |
| 14ab | Kaplan Kids Korner-Primary and Pastel | KP1G30233, 234 |
| 14ac | Kreative Korner-Primary and Pastel | KP1G30235 |
| 14ae | Circle Center-Primary and Pastel | CF321-061, 061P |
| 14af | Multi-Image Mirror Pentagon | CF332-130 |
| 15b | Gyro Puffs Bright | EN800-320 |
| 15c | Supersoft Adventure Village | ZB25 |
| 15d | Climb and Slide Play Center | CF421-014 |
| 15h | Coral Reef | EN145-076 |

found in paragraph 10 of its opinion ("¶ 10 products") were not inherently distinctive or nonfunctional and, therefore, were not protected.[4]

[4]The following chart lists the products in ¶ 10 which the district court found neither inherently distinctive or nonfunctional:

| Exhibit Number | Name of Children's Factory Product | Product Number |
| --- | --- | --- |
| 14d | Toddler Hollow | CF331-008 |
| 14e | Tiny Tot Seating Group | CF321-230 |
| 14f | Parlor Seating Group | CF321-231 |
| 14h | Infant Toddler Duck | CF331-005 |
| 14i | Infant Toddler Elephant | CF331-006 |
| 14l | Toddler Baby Blocks | CF362-516 |
| 14o | Baby Changer-Primary and Pastel | KP1A17619, CF321-290P |
| 14r | Dolphin Lounger | CF321-199 |
| 14s | Toddler Tumble n' Roll | KP1R09038, CF321-301 |
| 14t | Infant Toddler Whale | CF331-025 |
| 14u | Friendly Camel | CF331-029 |
| 14v | Big Duck | CF331-027 |
| 14w | Soft Lounger | CF349-005, 006, 007, 008 |
| 14x | Square Play Yard | KP1R17624 |
| 14ad | Kaplan Soft Starter Slide-Primary and Pastel | KP1G30224, 225 |
| 15a | Living Room Suite Primary | CF321-150 |

Children's Factory appealed both findings.  First, with respect to the ¶ 8 products, Children's Factory argues that they were likely to be confused with Benee's products.  Second, with respect to the ¶ 10 products, Children's Factory contends that they were inherently distinctive and nonfunctional.  Benee cross appealed as to the ¶ 8 products claiming that the products were not inherently distinctive or nonfunctional.

## II. APPLICABLE LAW

*Standard of Review*

While acknowledging that the individual factors of the trade dress test are findings of fact and therefore reviewable under a clearly erroneous standard, Children's Factory asserts that the likelihood of confusion prong of the test should be reviewed *de novo*.  Although some circuits have chosen to review the likelihood of confusion prong *de novo*,[5] the Eighth Circuit has consistently rejected this approach and reviews the district court's finding under the clearly erroneous standard.  *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994); *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132-33 (8th Cir. 1986); *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984).

*The Lanham Act*

| 15g | Soft Balance Beam | CF321-303 |

[5]*Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993); *Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 825 (Fed. Cir. 1992); *Esercizio v. Roberts*, 944 F.2d 1235, 1242 (6th Cir. 1991).

-5-

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), creates a federal cause of action for trade dress infringement.[6] All products have a trade dress which is defined as the "total image of a product, the overall impression created, not the individual features." *Insty\*Bit, Inc. v. Poly-Tech Industries, Inc.*, 95 F.3d 663, 667 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 1085 (1997) (citation omitted). Not every trade dress, however, is protected under the Lanham Act. In order for a trade dress to be protected under the Act it must satisfy a three part test: "(1) it is inherently distinctive or has

---

[6]Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which -
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, . . . of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the . . . geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.*

The Supreme Court has held that there is no textual basis for applying different analyses to the protection of trademarks and trade dress under section 43(a) of the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992). *See also Aromatique*, 28 F.3d at 868 (stating that "[t]he difference between trade dress and trademark is no longer of importance in determining whether trade dress is protected by federal law.").

acquired distinctiveness through secondary meaning;[7] (2) it is primarily nonfunctional;[8] and (3) its imitation would result in a likelihood of confusion in consumers' minds as to the source of the product." *Id.* at 667 (citing *Two Pesos*, 505 U.S. at 769).

## III. DISCUSSION

*Paragraph 8 Products*

As mentioned earlier, the district court found the ¶ 8 products to be inherently distinctive and nonfunctional. The district court found, however, that the ¶ 8 products

---

[7]In order to be inherently distinctive, a trade dress must be arbitrary, fanciful or suggestive. *Insty*Bit*, 95 F.3d at 672-73. It meets this test if its "intrinsic nature serves to identify a particular source of a product." *Two Pesos,* 505 U.S. at 768. A trade dress is not inherently distinctive if "the design . . . of the trade dress is dictated by the nature of the product." *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 786 (8th Cir. 1995). The second basic test for inherent distinctiveness, set forth in *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.,* 568 F.2d 1342 (C.C.P.A. 1977), is whether the product was a "common basic shape or design . . . whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." *Seabrook Foods,* 568 F.2d at 1344. The *Seabrook* test focuses not on arbitrariness, but on the uniqueness of the product in the field. *Stuart Hall Co.,* 51 F.3d at 786-87.

If the trade dress is not inherently distinctive, the party claiming protection must alternatively show that it has acquired secondary meaning. *Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996).

[8]A trade dress "is nonfunctional if it is an arbitrary embellishment primarily adopted for purposes of identification and individuality." *Prufrock Ltd., Inc., v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986). If a trade dress is nonfunctional, a competitor can effectively compete without copying the product's trade dress. *Id.* On the other hand, "[i]f the particular feature is an important ingredient in the commercial success of the product, the interests in free competition permits [sic] its imitation in the absence of a patent or copyright." *Id.* (citing *Truck Equip. Serv. Co. ("TESCO") v. Fruehauf Corp.*, 536 F.2d 1210, 1217-18 (8th Cir. 1976)).

were not ultimately protected because there was no likelihood of confusion with Benee's products. In view of the district court's holding, we initially review the likelihood of confusion finding because Children's Factory's claim of trade dress infringement cannot succeed without proof that a likelihood of confusion with other products existed.

In order to find a likelihood of confusion, this court has stated that "[t]here must be a substantial likelihood that the public will be confused." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1329 (8th Cir. 1984). Actual confusion is not essential to a finding of infringement. *Contour Chair Lounge Co., Inc. v. True-Fit Chair, Inc.*, 648 F. Supp. 704, 714 (E.D. Mo. 1986). The mere possibility of confusion, however, is not enough. *Id.* Six factors are used to determine whether the likelihood of confusion exists:

> (1) the strength of the owner's [trade dress]; (2) the similarity between the owner's [trade dress] and the alleged infringer's [trade dress]; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the [trade dress] owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Co-Rect Prod., Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985).

Children's Factory contends that the court erred by determining the last three factors in favor of Benee and by balancing the factors ultimately in Benee's favor. We disagree.

The first factor that Children's Factory challenges is whether the alleged infringer has the intent to pass off the goods as those of the owner. The district court found that Benee did not intend to pass off its goods as Children's Factory's goods

because Benee sells directly to the consumer. Children's Factory contends that this was error.

Children's Factory first argues that Benee intended to pass Children's Factory's trade dress off as their own because Benee blatantly copied their toys. Children's Factory points out that Benee's president admits that Benee used pictures from the Children's Factory catalog to prepare Benee's catalogs. R. at 265. Children's Factory relies on *Truck Equip. Serv. Co. ("TESCO") v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976), to support its contention that this deliberate imitation resulted in confusion to consumers and should, therefore, result in a violation of the Lanham Act. In *TESCO*, Fruehauf Corporation, a manufacturer of trailers, deliberately copied TESCO's trailer design. *TESCO*, 536 F.2d at 1213. Fruehauf then advertised its version of the trailer with a photo of the TESCO model. The trial court concluded that

> the exterior design of the [trailer] was unique, that portions of the design were nonfunctional, that the unique design had acquired a secondary meaning in the market place, that the actions of Fruehauf tended to cause confusion over the origin of the trailers and that Fruehauf had copied the exterior design of the [trailer] in order to trade upon the customer acceptance of the TESCO trailer.

*Id.* at 1214 (footnote omitted). This court agreed with the district court's finding that there existed a likelihood of confusion, rejecting the argument that consumers could not be confused because the defendant labeled its products as its own. *Id.* at 1220-21. The court noted that such a marketing practice may tend to promote rather than ensure against confusion because one may conclude that the similarity exists because the defendant purchased the plaintiff. *Id.* Likewise, in this case, Children's Factory points out that distributors and one consumer testified that they thought Children's Factory was operating under a different name. R. at 51, 298; J.A. at 168-71, 225-28, 272-77, 315-16. Children's Factory also mentions several occasions where Benee sent out

invoices and the names of the products were the same as Children's Factory names. R. at 209-17.

We hold that there is sufficient evidence to support the district court's determination that Benee is not trying to pass its goods off as those of Children's Factory. Although we agree with the district court's determination that Benee deliberately copied Children's Factory toys, we also agree with the district court's finding that Benee clearly represents to the ultimate consumer that Benee manufactures its own products. Benee engages in person-to-person selling techniques. R. at 258-60. Benee informs its customers that they will get better service and better quality at a cheaper price by dealing directly with the manufacturer. The catalogs used by Benee also make the source of its product clear.

Furthermore, we are not convinced that the *TESCO* rationale applies in this case. In *TESCO*, customers were "continually asking to determine what, if any, differences distinguished the products of the two companies." *TESCO*, 536 F.2d at 1220. In this situation, besides the testimony of the distributors which is second-hand at best, there was only one consumer who testified that she thought Children's Factory was operating under a different name. The district court properly discounted her testimony because she was a regular customer of Children's Factory and was aware that Children's Factory products are sold through distributors without bearing the Children's Factory name.

Children's Factory is also challenging the district court's finding on actual confusion. At trial and on appeal, Children's Factory pointed to only a few incidents of confusion. One consumer stated that she saw Benee's vinyl, soft-play product line at a trade show and thought Benee was distributing Children's Factory's products. R. at 298. Children's Factory argues that the distributors were also confused. J.A. at 168-71, 225-28, 272-77, 315-16. Children's Factory also points out that Benee received several warranty calls from owners of Children's Factory products and twice Benee

-10-

employees typed the wrong name on invoices. R. at 209-17, 240-45; Plaintiff's Exhibit 21a-b.

The district court was not clearly erroneous in its findings on actual confusion. The district court properly concluded that these incidents of actual confusion were insufficient because the incidents only occurred during Benee's inaugural year. With respect to the mistyped invoices, the district court correctly noted that while the mistakes may prove that Benee's agents typed product names incorrectly due to the imitation of Children's Factory products, the mistakes do not prove that customers were confused. Furthermore, the warranty calls can be dismissed because as this court has held, "vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'" *Duluth News-Tribune*, 84 F.3d at 1098.

The final factor that Children's Factory is appealing is the costs and conditions of purchase of the particular type of product involved. The district court weighed this factor in favor of Benee stating that consumers are more concerned with the cost and durability of the product than the source of the product or its trade dress. R. at 314-17. Children's Factory argues that even if consumers are more interested in price, the parties stipulated that the prices were comparable. Children's Factory, however, has missed the point; even if the products are comparably priced, they are expensive enough that consumers are going to be more apt to concentrate on the representations of quality and price, rather than on source.

The district court weighed and evaluated the evidence presented concerning consumer confusion and concluded that there was no likelihood of confusion by the consuming public. On the record before us, we cannot say that the district court's finding is clearly erroneous. As the district court stated,

> [t]hrough its direct sales, Benee is competing with Children's Factory and attempting to convince customers that Benee manufactures the superior product. This sales technique enhances the consumers' ability to distinguish between vinyl, soft-play products, and is, indeed, the type of conduct the Lanham Act intended to foster rather than prohibit.

*Children's Factory v. Benee's Toys*, No. 4:96CV1221JCH, slip op. at 21 (E.D. Mo. Nov. 26, 1997) (hereinafter "slip op."). Furthermore, the district court's finding on the likelihood of confusion was consistent with the position taken in the Restatement of Torts § 728, comment a, and adopted by this court in *WSM*:

> The ultimate test of whether or not there is a confusing similarity between a designation and a trade [dress] . . . which it is alleged to infringe is the effect in the market in which they are used. . . . In any event, the issue is whether an appreciable number of prospective purchasers of the goods or services in connection with which the designation and the trade [dress] . . . are used are likely to regard them as indicating the same source. That a few particularly undiscerning prospective purchasers might be so misled is not enough.

*WSM*, 724 F.2d at 1330. The finding of no likelihood of confusion by the district court is adequately supported by the evidence, is not clearly erroneous, and must be affirmed.[9]

*Paragraph 10 Products*

---

[9]Under these circumstances, we need not pass on the district court's findings of inherent distinctiveness and non-functionality of the ¶ 8 products. Thus, we do not decide Benee's cross-appeal. Accordingly, the cross-appeal is dismissed without prejudice.

In paragraph 10, the district court designated those products whose trade dresses were neither inherently distinctive nor nonfunctional. The court concluded that each ¶ 10 product is "neither arbitrary or fanciful," but merely "dictated by the nature of the product." Slip op. at 11 (citing *Stuart Hall Co.,* 51 F.3d at 785-86). The court further reasoned that these products had not acquired secondary meaning. Once again, we find that the district court did not commit clear error in so holding.

Children's Factory argues that the ¶ 10 products were, in fact, inherently distinctive and, in the alternative, had acquired secondary meaning. Children's Factory claims that these products were inherently distinctive because they utilized arbitrary and fanciful designs elements such as stylized, soft-edged abstracted shapes and the use of bright or pastel colors. Children's Factory further argues that because there are infinite design possibilities for soft-play products, its products are not dictated by the nature of the product itself and competitors can compete without copying.

Children's Factory criticizes the court for not attributing sufficient weight to certain testimony. In so doing, Children's Factory relies on the testimony of its president and the president of a competitor who both stated that Children's Factory's soft-play products were distinctive and readily identifiable by customers. R. at 156-59, J.A. at 312-13. Children's Factory also points to the testimony of distributors who testified that Children's Factory's products were unique and recognizable. J.A. at 210-11, 216-21, 269-74.

Although Children's Factory maintains that the ¶ 10 products are inherently distinctive, Children's Factory argues in the alternative that the products have acquired a secondary meaning because the trade dress serves to identify the source of the goods. Children's Factory admits that no direct evidence, *i.e.*, consumer surveys, was presented. It contends, however, that there was sufficient circumstantial evidence to prove that the products had secondary meaning. First, Children's Factory mentions the testimony of a consumer who identified the trade dress with Children's Factory.

Second, Children's Factory relies on the distributors who testified that they highly tout Children's Factory products to consumers. Third, Children's Factory points out that it attends trade shows, "drop ships" to the consumer, and sews labels on most of its products. R. at 22-23. Fourth, Children's Factory spent 1.1 million dollars in advertising over the last five years. R. at 37. Finally, Children's Factory contends that Benee's deliberate copying of its products is evidence of a desire to take advantage of the secondary meaning that Children's Factory had established. We disagree.

We do not find the district court's findings with respect to the ¶ 10 products clearly erroneous. First, the district court did not commit clear error in finding that the products in ¶ 10 were not inherently distinctive. The products were not arbitrary or unique in the field. For example, as the district court pointed out, the Children's Factory's Square Play Yard is simply a matted, square play area with a matted side wall. The building blocks are merely building blocks.

Neither did the district court err in finding that the ¶ 10 products had not acquired secondary meaning. The goods have not become so associated with the public mind that the dress "serves to identify the source of the goods." *See Stuart Hall Co.*, 51 F.3d at 789. The district court noted that Children's Factory did not present a customer survey. The district court also properly discounted the testimony of the four distributors. We have held that letters from distributors are "at best only indirect evidence of any connection in the minds of consumers. . . ." *Aromatique,* 28 F.3d at 872. The district court also properly discounted the 1.1 million dollars Children's Factory spent to promote its products in the past five years, because this amount included travel expenses which are not relevant to secondary meaning. *See id.* (stating that "[t]he amount spent on travel, which is dependent in part on the distance traveled and the class of travel and accommodations, is of no relevance to a determination of whether the promoted trade dress identifies, in the minds of the consumers, the source of the product.").

Although the district court was persuaded, as is this court, that Benee's allegedly infringing products were deliberate imitations of Children's Factory products, this alone cannot prove secondary meaning. This court has held that although copying a trade dress can be evidence of secondary meaning, "[w]here there is a demand for a type of product, capitalizing on that demand by copying that product does not necessarily indicate that the original product has secondary meaning." *Id*. at 871.

The most compelling evidence against the ¶ 10 product's secondary meaning is the fact that Children's Factory sold its toys almost exclusively through distributor catalogs wherein their name was not even mentioned. R. at 70-71; Plaintiff's Exhibits 35a-p. As the district court correctly stated, "[w]hile Children's Factory's decision to sell nearly all of its products through distributors' catalogs may have maximized its sales, it virtually insured that Children's Factory's vinyl, soft-play product line would never be associated with a single source." Slip op. at 12. For the foregoing reasons, the district court's holding that secondary meaning was not established is affirmed.

We affirm the district court's findings that the ¶ 10 products are not inherently distinctive nor have acquired secondary meaning and, therefore, are not entitled to protection under the Lanham Act.[10]

## IV. CONCLUSION

Based upon the foregoing, we hold that the district court did not clearly err in finding that none of the Children's Factory products were protected under the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, the judgment of the district court is affirmed.

_____

[10]In view of this holding, it is not necessary for this court to review the finding that ¶ 10 products are functional.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.