RAINFOREST CAFE, INC., Plaintiff,

v.

AMAZON, INC., d/b/a Amazon Bar & Grill, a California Corporation, and Anthony E. Colagreco, Defendants.

No. 97–459 (MJD/AJB).

United States District Court, D. Minnesota.

Sept. 30, 1999.

Daniel W. McDonald, D. Randall King, John L. Beard, Merchant & Gould, Minneapolis, MN, Thomas Jerome Shroyer, Paul G. Neimann, Paul Joseph Yechout, Moss & Barnett, Minneapolis, MN, for plaintiff.

Marshall Howard Tanick, Seymour J. Mansfield, Vincent John Ella, Mansfield Tanick & Cohen, Minneapolis, MN, Daniel R Kelly, Maun & Simon, Mpls, MN, Daniel E. Gustafson, Renae Diane Steiner, Karla Marie Gluek, Vincent J. Esades, Heins Mills & Olson, Minneapolis, MN, for defendants.

### MEMORANDUM AND ORDER

DAVIS, District Judge.

### BACKGROUND

#### I. The Amazon Bar & Grill

In 1991, Anthony Colagreco conceived of the concept for the Amazon Bar & Grill and began taking practical steps necessary to develop such concept. The first Amazon Bar & Grill opened in Santa Monica, California on October 31, 1992 as a small restaurant, designed by Franco Vecchio, on the first floor of a large office building. The grand opening was televised nationally on the "E Channel," and additional television coverage of the restaurant by "Entertainment Tonight" followed. The grand opening of a second Amazon Bar & Grill, designed by Chris Zurga, took place on June 19, 1993 on a commercial street in the Sherman Oaks area of Los Angeles and was nationally televised on the "Cable News Network." To create the rainforest ambiance, the Amazon Bar & Grill's decor included the following features: a fiber-optic star system, including shooting stars, on a domed ceiling; jungle murals with cartoon-like animals; artificial banyan trees forming a branch canopy overhead; waterfalls; a "tree hut" for live entertainment; simulated earth and rock formations; anthropological artifacts; silk flowers; jungle trees; foliage hanging from the ceiling; jungle sounds; a concrete floor; a dolphin on a pedestal; a small retail cabinet—approximately six feet by two feet—containing artifact-like items and clothes with the "Amazon" logo; an aquarium with exotic fish; and a menu with items reflecting the rainforest theme. Both restaurants had small floor plans and featured popular live adult musical acts in the evenings, thereby giving the restaurants a nightclub atmosphere and catering to an adult crowd. The Amazon Bar & Grill subsequently closed its Santa Monica restaurant in February 1997 and sold its Sherman Oaks restaurant to Chamber Gas, Inc., maintaining a license agreement with Chamber Gas, Inc. for use of the trade dress created and owned by the Amazon Bar & Grill.

#### II. The Rainforest Cafe

The Rainforest Cafe developed from the idea of a rainforest-themed restaurant, conceived in approximately 1979 by Steven Schussler. By 1980, Schussler had registered the name "The Rainforest Cafe" with the Minnesota Secretary of State. Thereafter, Schussler began to transform his home into a prototype for the Rainforest Cafe and with a colleague began to develop a menu for the proposed restaurant. In 1987, Schussler organized the "Rescue the Rainforest Days" event at a Minneapolis nightclub in which he featured a rainforest-themed outdoor cafe, rainforest-related menu items, and a dining room decorated with rainforest foliage and waterfalls. In 1992, an investor decided to support Schussler's Rainforest Cafe concept.

In October 6, 1993, Schussler and Gregory Rothweiler and Bill Hickey of Shea Architects, Inc. ("Shea") met to discuss, among other issues related to the Rainforest Cafe's development, an upcoming "exploration trip" to the Amazon Bar & Grill in Los Angeles, during which they intended to "learn things," including "flooring, etc." Esades Aff., Exs. 17, 19. A second meeting between Schussler and Shea took place on October 12, 1993, during which "research trips" to numerous restaurants were discussed, including the trip to the Amazon Bar & Grill in Los Angeles. Esades Aff., Ex. 22. The "topics to be covered" during said trips included "product development, retail merchandising, and design issues." *Id.* On October 22, 1993, Schussler traveled to Los Angeles and visited the Amazon Bar & Grill. Esades Aff.,

Ex. 9, Schussler Dep. at 134–135. Colagreco testifies that during Schussler's visit to the Amazon Bar & Grill, he carefully looked at the decor, including "[t]he trees, the foliage, the waterfalls, the bar itself, the walls," inquired as to the rainforest sounds, and, in general, "bombarded" Colagreco with questions regarding the restaurant. Esades Aff., Ex. 3, Colagreco Dep. at 305–307. During the visit, Schussler also asked Steve Cuccio, also of the Amazon Bar & Grill, for the name of the muralist who painted the jungle scene on the side of the building in which the Amazon Bar & Grill was located, and Cuccio informed Schussler that said artist was Chris Zurga. Esades Aff., Ex. 9, Schussler Dep. at 171–72. Following his visit to the Amazon Bar & Grill in Los Angeles, Schussler contacted Zurga and paid for him to fly to Minneapolis "to see if he was capable of helping us" and to "design and provide trees for the decor." *Id.* at 177–78; Esades Aff., Ex. 46. In November 1993, as part of their "research tour" for Schussler, representatives from Shea Architects visited Amazon Bar & Grill in Los Angeles and shared their research with Zurga. Esades Aff., Schussler Dep. at 175–76.

### III. Proposed Expansion of the Amazon Bar & Grill

In approximately November 1993, Colagreco met with Lawrence D'Amato to discuss his interest in opening an Amazon Bar & Grill in Orange County, California and informed him that he was looking for investors for the project. Esades Aff, Ex. 4, D'Amato Dep. at 13–14. D'Amato testifies that he began "looking around" and "checking out demographics" in Orange County to determine an appropriate location for such a restaurant and that he provided Bill Sylvestri, another potential investor, and Colagreco with the names of real estate brokers in the area. *Id.* at 33–37. In early 1996, D'Amato learned that the Rainforest Cafe had signed a lease at South Coast Plaza in Orange County and thereupon expressed concerns to Colagreco regarding investing "in something that

had a similar concept so close." *Id.* at 72. D'Amato testifies that he stated, "At this point, you know, I . . . have to question my . . . investment dollars. I liked it better when it was unique and there was nothing else in the area like it." *Id.* at 73. D'Amato states that an article in "Investors Business Daily" regarding the opening of the Rainforest Cafe in Orange county "was pretty much the solidification that I wasn't going to invest" in an Amazon Bar & Grill to be opened nearby. *Id.* at 72–73.

Similarly, in December 1994, Colagreco met with four investors to discuss opening an Amazon Bar & Grill restaurant in New York City. Esades Aff., Ex. 8, Lathrop Dep. at 12–15. Robert Lathrop, one of the four investors, testifies that the investors "were interested in furthering the discussion," as "the Amazon concept would be quite unique in New York City." Esades Aff., Ex. 8, Lathrop Dep. at 29. Lathrop testifies that some time in 1995, the four investors became aware that the Rainforest Cafe—"a similar concept"—was coming to Long Island. *Id.* at 31–36. Lathrop states that "when I was aware that there was a similar club coming into Long Island, the whole idea was to be . . . quite different . . . I . . . wasn't comfortable anymore, and I pulled out." *Id.* at 31–36.

In 1996, Lanthrop and another investor, Joe Corallo, were still interested in the Amazon Bar & Grill and discussed with Colagreco the possibility of investing in a New Jersey location. *Id.* at 58–59. Again, however, Lanthrop decided not to invest in the Amazon Bar & Grill when he learned that the Rainforest Cafe was opening a restaurant across the river from the proposed location for the Amazon Bar & Grill. *Id.* at 61–62. Lanthrop testifies that learning of the Rainforest Cafe's opening "put a damper on it for me again" and that after "running into this issue the second time . . . I just figured, forget about it." *Id.* at 62.

In August 1995, Edward Jankowski approached Colagreco to discuss the possibility of opening an Amazon Bar & Grill in

the Fifth Avenue retail establishment housing Liz Claiborne scheduled to open in August 1996 in New York City. Esades Aff., Ex. 6, Jankowski Dep. at 12–13. Jankowski testifies that he contacted the Amazon Bar & Grill because he was looking for "something that was going to be new and unique, that no one else in New York would have." *Id.* at 13, 27. When Jankowski learned that another restaurant with the rainforest theme was opening in New York, he determined that "the rainforest concept is not as unique as we initially thought." *Id.* at 28. Jankowski and others involved in the opening of the Liz Claiborne store eventually abandoned the concept of opening a restaurant in the new retail establishing, in part because "we felt that there wasn't anything novelty enough to set Liz Claiborne Fifth Avenue store aside from other stores in the area." *Id.* at 37.

### IV. Opening of the Rainforest Cafe

The first Rainforest Cafe opened at the Mall of America on October 3, 1994, and approximately twenty additional Rainforest Cafes have opened nationwide since then, including a location at South Coast Plaza in Costa Mesa, California, just south of the Amazon Bar & Grill in Sherman Oaks. All Rainforest Cafe restaurants have large floor plans and are built in or near shopping malls or major family entertainment areas, catering to families with children. Niemann 2d Aff., Ex. 1. Each Rainforest Cafe features a variety of elements comprising the rainforest decor, including; live and artificial plants and animated animals, including a fifteen-foot crocodile, a boa constrictor, butterflies with animated wings, a life-size gorilla with animated facial expressions; perching rings for parrots and live tropical birds; a large Atlas man; a dolphin on a pedestal; a large, walk-through tropical aquarium with exotic fish separating the retail area from the dining area; an elephant reception stand; "Tracy the Talking Tree"; jungle animal bar stools; a thirty-eight-foot mushroom covering the bar area; a simulated starlit sky with shooting stars; misting machines; simulated lightning and thunder storms; a rain wall where rain falls from the ceiling to a basin below; tropical aromas; jungle sounds; a large fruit tower referred to as, "Carmen Miranda Tower"; a wishing pond; rock formations; a concrete floor; wait staff dressed in safari-like uniforms and "curators" providing rainforest-related lectures; and signs and products with the "Rainforest Cafe" name and motif-eight stylized animals referred to as "The Wild Bunch"—and a large retail area, approximately 3,000–4,000 square feet, to market said products. *See* Esades Aff., Ex. 9, Schussler Dep. at 141–142; Niemann 2d Aff., Ex. 1. The menus feature references to tropical locations including, until recently, the Amazon.

### V. Commencement of Litigation

On October 18, 1997, the Rainforest Cafe contacted the Amazon Bar & Grill threatening to sue the restaurant for trade dress infringement, stating that "[i]t has come to my . . . attention that you intend to open an establishment for which the proposed name is 'Al E. Gator's Rainforest Emporium & The Rainforest Cafe a unique retail store offering a variety of treasures from our rainforests!'" Esades Aff., Ex. 46. On November 27, 1996, Amazon Bar & Grill forwarded a letter to Plaintiff asserting misappropriation by Rainforest Cafe of Amazon Bar & Grill's trade dress and formally requesting compensation. Am.Compl. at ¶ 15. In a letter of December 12, 1996 to Plaintiff, Amazon Bar & Grill stated that until the matter was resolved, Rainforest Cafe must "immediately cease and desist any future building, development, announcements or expansion" in southern California. *Id.* at ¶ 17. Through February 1997, Amazon Bar & Grill threatened litigation if Plaintiff failed to accept its proposal for compensation. *Id.* at ¶¶ 18–19.

On February 27, 1997, Rainforest Cafe filed a complaint against Amazon Bar & Grill for declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, of invalidity and non-infringement of Amazon Bar & Grill's

claimed trade dress rights. The Rainforest Cafe later amended said complaint on May 2, 1997 to join as defendants Anthony Colagreco, Steven Cuccio, and Chamber Gas, Inc.[1] On June 5, 1997, Defendants responded to Plaintiff's complaint, and Amazon Bar & Grill filed a counterclaim against Rainforest Cafe, alleging: (1) trade dress infringement; (2) trademark infringement; (3) dilution of trademark; (4) misappropriation of trade secrets; (5) unfair competition; (6) interference with prospective business advantage; and (7) fraud. Subsequently, Amazon Bar & Grill withdrew its claim of misappropriation of trade secrets.

This matter is before the Court on Plaintiff's motion for summary judgment as to all remaining counterclaims filed against Rainforest Cafe. This matter is also before the Court on Defendant Anthony E. Colagreco's motion for summary judgment dismissing Rainforest Cafe's claims against him in an individual capacity and on Rainforest Cafe's motion to view the premises at issue.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir. 1992); *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. Fed. R.Civ.P. 56(b); *Celotex,* 477 U.S. at 323,

106 S.Ct. 2548, 91 L.Ed.2d 265. To defeat summary judgment when a properly supported motion for summary judgment is made, however, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### II. Trade Dress Infringement Claim

Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a):

(1) [a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which (A) is likely to cause confusion ... or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), the Supreme Court set forth a two-part test for eligibility for trade dress protection under the Lanham Act § 43(a): (1) the trade dress is primarily nonfunctional; (2) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning. *Two Pesos* 505 U.S. at 769, 112 S.Ct. 2753 (1992). Once eligibility is demonstrated, a claimant can only establish liability by proving a third element—that the trade dress creates a likelihood of confusion in consumers' minds as to the origin of the services. *Id.* at 769–70, 112 S.Ct. 2753. Summary judgment is appropriate if a plaintiff fails to raise a genuine issue of material fact as to any one of the three elements. *See Taj Mahal Enterprises, Ltd. v. Trump,* 745 F.Supp. 240, 252–53

1. As discussed below, Rainforest Cafe subsequently voluntarily dismissed Cuccio and Chamber Gas, Inc. from this case.

(D.N.J.1990) (citations omitted); *Woodsmith Publishing Co. v. Meredith Corporation,* 904 F.2d 1244 (8th Cir.1990).

Trade dress is the total image of a business or product—the overall impression created rather than the individual features. *Woodsmith,* 904 F.2d at 1247; *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 627 (8th Cir.1987). In the case of a restaurant, the trade dress "may include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniform and other features reflecting the total image of the restaurant." *See Taco Cabana International, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1118 (5th Cir.1991). Thus, when evaluating a claim of trade dress infringement, the Court must examine the trade dress as a whole, considering the totality of the elements. *Id.* at 1120.

*A. Functionality*

Trade dress is nonfunctional if "it is an arbitrary embellishment primarily adopted for purposes of identification and individuality." *Insty*Bit, Inc. v. Poly–Tech Industries, Inc.,* 95 F.3d 663, 673 (8th Cir.1996) (citation omitted); *Prufrock Ltd., Inc. v. Lasater,* 781 F.2d 129, 133 (8th Cir.1986). "If a trade dress is nonfunctional, a competitor can effectively compete without copying the product's trade dress." *Children's Factory, Inc. v. Benee's Toys, Inc.,* 160 F.3d 489, 494 n. 8 (8th Cir.1998) (citing *Prufrock,* 781 F.2d at 133). Conversely, if the design elements of a trade dress are essential to others attempting to compete in a given business, then the trade dress as a whole is functional and unprotected by the Lanham Act. *See Taco Cabana,* 932 F.2d at 1119. The test for determining whether trade dress is functional, therefore, is "whether protection of the feature would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Woodsmith,* 904 F.2d at 1248 n. 6 (citation omitted). Evidence of a competitors' non-infringing design alternatives, therefore, creates a genuine issue of material fact as to the issue of functionality. *Taco Cabana,* 932 F.2d at 1119; *Insty*Bit,* 95 F.3d at 673–74.

"In assessing the functionality, the appropriate inquiry is whether the collection of design elements, taken as a whole, are functional, not whether individual elements of the trade dress could be categorized as such." *Insty*Bit,* 95 F.3d at 673; *see also, Taco Cabana,* 932 F.2d at 1120. Therefore, while purely functional individual features may not be protected, they may be combined in a particularly arbitrary way to create a distinctive impression, which is not functional and which enjoys protection. *See Taco Cabana,* 932 F.2d at 1118–1119. The party asserting trade dress infringement of an unregistered trade dress, such as Amazon Bar & Grill in the present case, has the burden of proving that the trade dress is nonfunctional. *Aromatique, Inc. v. Gold Seal, Inc.,* 28 F.3d 863 (8th Cir.1994).

It is undisputed that the rainforest theme is functional and is not protected by the Lanham Act. In the context of restaurant trade dress infringement claims, the Lanham Act will not protect the core concept of a restaurant's trade dress, such as the rainforest theme, because others who wish to use the same concept would consequently be severely limited in their ability to do so and competition would be hindered. *Prufrock,* 781 F.2d at 134 (citing *Truck Equipment Service Company v. Fruehauf Corporation,* 536 F.2d 1210, 1217 (8th Cir.1976)). The issue presently before this Court, however, is whether the combination of features comprising the rainforest theme as manifested in the Amazon Bar & Grill enjoys protection because it creates a "distinctive impression" and was adopted purely for "identification and individuality" or whether, as Plaintiff argues, the combination of features is "essential to others attempting to compete" in the rainforest-themed restaurant business.

In finding that a genuine issue of fact exists as to whether Amazon Bar & Grill's trade dress is nonfunctional, this Court

need look no further than Plaintiff's own testimony with regard to the rainforest theme as implemented in the Rainforest Cafe. Describing his experimentation with the rainforest theme at "Jukebox Saturday Night," Schussler testifies:

> We built an outdoor cafe with Tiki huts and plants and waterfalls ... We brought our birds down. We had Tiki torches. Waterfalls, lots of plants and trees, portable bars ... Props, monkeys and others. Used some of those brass and copper animals.

Esades Aff., Ex. 9, Schussler Dep. at 56–57. Schussler further explains that said "outdoor cafe experiment," entitled "Rescue the Rainforest," was realized in other locations and that, with regard to the decor "[n]o two places were ever alike." *Id.* at 57–58. Similarly, when asked whether he perceives his rainforest theme as distinct from others' concept of a rainforest theme, Schussler replies, "[a]bsolutely" and describes "[p]roprietary articles that make us [Rainforest Cafe] different." *Id.* at 140–41. Thus, the Rainforest Cafe has both acknowledged that it can compete effectively without copying another restaurant's rainforest decor and, through testimony as to the outdoor cafe experiment "Rescue the Rainforest," has provided this Court with evidence of "design alternatives" to create a rainforest-themed restaurant. This Court therefore finds a genuine issue of material fact as to whether the rainforest theme as expressed in the Amazon Bar & Grill is functional. *See Taco Cabana,* 932 F.2d at 1119; *Insty*Bit,* 95 F.3d at 673–74.

*B. Distinctiveness*

■ "[A]n identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos,* 505 U.S. at 769, 112 S.Ct. 2753 (citations omitted). In *Two Pesos,* the Supreme Court adopted the five categories of generally increasing distinctiveness set forth by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976), to classify trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Two Pesos,* 505 U.S. at 768, 112 S.Ct. 2753.[2] The latter three categories are considered inherently distinctive and entitled to protection, while generic marks are not registrable as trademarks and are inherently unprotected. *Id.; see also Insty*Bit,* 95 F.3d at 672–73; *Stuart Hall,* 51 F.3d at 785 (citing *Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.,* 780 F.2d 1324, 1329 (8th Cir.1985)). A descriptive mark is not inherently distinctive but may acquire the distinctiveness required for Lanham Act protection if it "has become distinctive of the applicant's goods in commerce." *Two Pesos,* 505 U.S. at 769, 112 S.Ct. 2753 (citing Lahman Act § 2(e), 15 U.S.C. § 1052(e), (f)). This acquired distinctiveness is commonly referred to as "secondary meaning" and must be demonstrated as a condition precedent solely for registration of descriptive marks, as secondary meaning need not be shown if a mark is inherently distinctive. *Id.* at 769, 772, 112 S.Ct. 2753 (citations omitted); *see also, Stuart Hall,* 51 F.3d at 785. The Eighth Circuit has consistently applied the *Abercrombie* classifications when addressing the inherent distinctiveness of a trademark or trade dress. *Stuart Hall,* 51 F.3d at 785.[3]

**2.** The five categories set forth in *Abercrombie* and adopted by the Supreme Court in *Two Pesos* have been defined as follows: (1) "generic" refers to "the genus of which the particular product is a species;" (2) "descriptive" refers to a trade dress that "immediately conveys the nature or function of a product;" (3) "suggestive" refers to a trade dress that "requires some measure of imagination to reach a conclusion regarding the nature of the product;" (4) "arbitrary" refers to the application of a common dress in an unfamiliar way; and (5) "fanciful" refers to a trade dress "invented solely for [its] use as ... trade dress." *Insty*Bit,* 95 F.3d at 673, ns. 10–14 (citations omitted).

**3.** "This test is equally applicable to trade dress under § 43(a), because ' § 43(a) provides no basis for distinguishing between

Amazon Bar & Grill does not assert that its trade dress has acquired secondary meaning. The issue before this Court therefore is whether a genuine issue of material fact exists as to whether the trade dress is inherently distinctive-suggestive, arbitrary, or fanciful. In determining inherent distinctiveness this Court focuses on "the total appearance of the product, not on individual elements," *I.P. Lund Trading v. Kohler Co.*, 163 F.3d 27, 39 (1st Cir.1998), and asks " 'whether or not the trade dress is of such a design that a buyer will immediately rely on it to differentiate the product from those of competing manufacturers.' " *Insty\*Bit*, 95 F.3d at 673 (citing *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1206 (Fed.Cir.1994)).

■ Nonetheless, in determining inherent distinctiveness, the proper focus is not on the trade dress's impact on consumers. *Stuart Hall*, 51 F.3d at 787. Indeed, the classification of a trade dress as arbitrary or fanciful or suggestive "requires no showing that the trade dress is memorable or striking" to consumers. *Id.* at 785. Instead, the proper focus is on the arbitrariness of the trade dress and its relevance to the product, as set forth in *Abercrombie*, and, similarly, on a comparison of the trade dress with others in the same field to examine said arbitrariness, as set forth in *Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A.1977). *See Stuart Hall*, 51 F.3d at 787.

In *Abercrombie*, the court found that determination of inherent distinctiveness requires examination of the relation between the trade dress and the product and the extent to which the product dictates the particular trade dress at issue. *Id.* at 786. If the design of the trade dress is dictated by the nature of the product, that trade dress is not inherently distinctive. *Id.* In *Seabrook Foods*, the court compared the plaintiff's trade dress to others in the same class of goods, describing the distinctiveness test as:

trademark and trade dress.' " *Stuart Hall Company, Inc. v. Ampad Corp.*, 51 F.3d 780,

whether it was a 'common' basic shape or design, whether it was unique or unusual in a particular field, [or] whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods.

*Stuart Hall*, 51 F.3d at 786 (citing *Seabrook Foods*, 568 F.2d at 1344 (C.C.P.A. 1977)); *see also Children's Factory*, 160 F.3d at 494 n. 7. This Court notes that the tests set forth in *Abercrombie* and *Seabrook Foods* are highly compatible and complementary, as an inquiry as to whether a product dictates a particular trade dress can largely be resolved by a comparison of other products in the field to determine whether the trade dress at issue is a "common basic shape or design" or "unique or unusual" in its field.

In *I.P. Lund Trading*, the court noted that "[t]here is a relationship between functionality and distinctiveness":

[i]f a feature is functional, it is likely that all similar articles will have a similar functional feature, and one seller's feature is not likely to evoke any response in buyers that it is unique or is a distinctive symbol of origin.

*I.P. Lund Trading*, 163 F.3d at 38–39. Conversely, if a feature is nonfunctional, it is likely that a survey of similar products in the field will not reveal widespread use of the nonfunctional feature.

■ Applying the tests set forth in *Abercrombie* and *Seabrook Foods* in light of the holding in *I.P. Lund Trading*, this Court recalls that its finding that a genuine issue of fact exists as to whether the rainforest-themed restaurant concept as realized by the Amazon Bar & Grill is functional was based largely on the testimony and evidence presented by the Rainforest Cafe that other means exist by which a rainforest theme can be developed. Similarly, this Court finds that a genuine

785 (8th Cir.1995) (citation omitted).

issue of fact exists as to whether the totality of the elements comprising the rainforest theme created by the Amazon Bar & Grill is dictated by the rainforest-themed restaurant business and thus a common, basic design in such business or whether the trade dress of the Amazon Bar & Grill is unique and unusual in its field and therefore inherently distinctive.

### C. Likelihood of Confusion

 "The test for trademark infringement is whether the allegedly infringing mark 'is likely to cause confusion, or mistake, or to deceive' potential . . . consumers." *Empi v. Iomed, Inc.*, 923 F.Supp. 1159, 1166 (D.Minn.1996) (citing 15 U.S.C. § 1114(1)(b)).[4] Proof of actual confusion is necessary for an award of damages, while proof of a likelihood of confusion is sufficient to obtain injunctive relief. *See Woodsmith*, 904 F.2d at 1247 n. 5 (citing *Co–Rect*, 780 F.2d at 1329–30); *see also Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981).

 In determining likelihood of confusion, the Eighth Circuit considers the following factors: (1) strength and distinctiveness of the established trade dress; '(2) similarity between the owner's trade dress and the alleged infringer's trade dress, based on examination of the products as a whole; (3) degree to which the products compete with each other; (4) alleged infringer's intent to "pass off" its goods as those of the owner; (5) incidents of actual confusion; and (6) type of product, its costs, and conditions of purchase.[5] *Insty\*Bit*, 95 F.3d at 663 (citing *Co–Rect*, 780 F.2d at 1330); *Children's Factory*, 160 F.3d at 494. No one factor in the analysis is determinative, "and the final determination must be based on consideration of all relevant factors." *Buca, Inc. v. Gambucci's, Inc.*, 18 F.Supp.2d 1193, 1208 (D.Kan.

1998); *see also Insty\*Bit*, 95 F.3d at 670; *Children's Factory*, 160 F.3d at 494.

In the present case, Amazon Bar & Grill also pleads a theory of reverse confusion in addition to the traditional claim of forward confusion. In *Dream Team Collectibles, Inc. v. NBA Properties, Inc.*, 958 F.Supp. 1401 (E.D.Mo.1997), the court concluded that although the Eighth Circuit had as yet to recognize the theory of reverse confusion, all U.S. Courts of Appeals which had considered claims of reverse confusion had accepted the doctrine, and, therefore the Eighth Circuit would also recognize that "the likelihood of confusion language of § 32(1) of the Lanham Act is broad enough to encompass reverse confusion." *Id.* at 1408.

 Reverse confusion exists when "a larger, more powerful company uses the trademark of a smaller, less powerful senior owner and thereby causes likely confusion as to the source of the senior user's goods or services." *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 474 (3rd Cir.1994); *see also, Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1246 (8th Cir.1994) (finding that reverse confusion exists when "a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured").

In the present case, it is undisputed that the Rainforest Cafe is a larger establishment, both in size and in number of stores nationwide, than the Amazon Bar & Grill, that the Rainforest Cafe opened in the Mall of America subsequent to the opening of the Amazon Bar & Grill in Santa Moni-

---

4. "Likelihood of confusion is evaluated in the same manner in trade dress cases as it is in trademark cases." *Empi*, 923 F.Supp. at 1166.

5. When considering the likelihood of confusion, a court should "[stand] in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *General Mills*, 824 F.2d at 627.

ca, California, and that the Rainforest Cafe is thus a "junior user" of the rainforest theme. This Court finds, therefore, that the likelihood of confusion analysis in the present case should evaluate the likelihood of reverse confusion. In *Dream Team*, the court applied the six above-enumerated factors considered relevant in the analysis of traditional forward confusion and found that "the Court's analysis of the ... factors must be modified, as necessary, in a case of reverse confusion." *Dream Team*, 958 F.Supp. at 1411.

### 1. Strength of Trade Dress

▆▆▆ Favorable reviews from magazines and nationally televised programs as well as extensive advertising support a finding of a strong trade dress. *See Insty\*Bit*, 95 F.3d at 670; *Empi*, 923 F.Supp. at 1166. In a case of reverse confusion, the court analyzes the strength of the trade dress as of the time of the initial alleged infringement rather than on the basis of the strength resulting from the allegedly infringing use. *Dream Team*, 958 F.Supp. at 1411–12 (citation omitted). The Amazon Bar & Grill advertised extensively in the Los Angeles area, running radio ads, cable television commercials, newspaper ads, and inserts in newspapers. Esades Aff., Ex. 3, Colagreco Dep. at 275–76. The majority of the advertising jointly promoted both the Santa Monica restaurant and the Sherman Oaks restaurant and began prior to the restaurant openings and "was fairly ongoing after the Sherman Oaks store opened in '93." *Id.* Furthermore, the opening of the Amazon Bar & Grill in Santa Monica was nationally televised on the "E Channel," approximately six months later "Entertainment Tonight" featured the Amazon Bar & Grill in Santa Monica, and in June 1993, CNN covered the opening of the Sherman Oaks Amazon Bar & Grill. *Id.* at 280–81. This Court finds that such extensive advertising and media coverage suggests that this factor weights in favor of Amazon Bar & Grill.

### 2. Similarity

The similarities between the expression of the rainforest theme in the Rainforest Cafe and the Amazon Bar & Grill include: (1) banyan trees whose branches form a canopy in the restaurant; (2) a fiber-optic star ceiling with shooting stars; (3) mist emanating from waterfalls; (4) rainforest sounds; (5) aquariums with exotic fish, though the aquariums differ significantly in size; (6) sculpted rock formations; (7) murals of jungle animals; (8) live birds formerly present in the Amazon Bar & Grill and still utilized in most Rainforest Cafe restaurants; (9) a mist system formerly used by the Amazon Bar & Grill and still used by the Rainforest Cafe; (10) animals such as a frog, rainforest birds, and crocodiles; and (11) wishing wells from which money is donated to groups concerned with rainforest preservation. Neimann 2d Aff., Ex. 1.

Similarity of trade dress is determined by examining the overall impression of a trade dress as a whole, rather than through the comparison of individual features, *Empi*, 923 F.Supp. at 1166 (citations omitted). Therefore, while the Amazon Bar & Grill and the Rainforest Cafe undeniably utilize some similar elements in the creation of their respective rainforest-themed restaurants, such similarities are not dispositive on the ultimate question of similarity. Courts have found that "[e]ven if the trade dress is similar, the likelihood of confusion is reduced if the two trade dresses, taken as a whole, are visually distinct." *Buca*, 18 F.Supp.2d at 1209 (citation omitted).

After review of numerous photographs, exhibits, affidavits, depositions, video and other evidence on the record before this Court comparing the trade dress of the Rainforest Cafe and the Amazon Bar & Grill, this Court finds that when it considers the "overall impression" of each restaurant's trade dress "as a whole," this factor weights in favor of Amazon Bar & Grill.

In its prospectus, the Rainforest Cafe acknowledged that "[t]he Company is aware of one restaurant located in the Los Angeles metropolitan area that is operating with a similar physical appearance as the Rainforest Cafe and, as a result, the company may be restricted in operating in the same market as such restaurant." Esades Aff., Ex. 73 at BC9. Furthermore, testimony from, Jankowski, who contacted the Amazon Bar & Grill with regards to a possible location on Fifth Avenue in New York City, is telling:

> I was amazed of the similarities between the Amazon and the Rainforest Cafe, I mean the similarities in decor and ambience ... it was the same theme as Amazon ... the ambience, the trees, the ivy, the color that it was painted, I mean the whole ... sense as I said before when I was in Santa Monica and The Valley, that when you walked in you got the feel that you were in a rainforest, and that's I mean those were the similar attributes I think.

Esades Aff., Ex. 6, Jankowski Dep. at 31–32

### 3. Competition

"Direct competition requires a lesser degree of showing to establish likelihood of confusion than products not in direct competition with one another." *See Empi*, 923 F.Supp. at 1167 (citing *Squirt-Co. v. Seven–Up Company*, 628 F.2d 1086, 1091 (8th Cir.1980)).

It is undisputed that the Rainforest Cafe and the Amazon Bar & Grill both operate in the Los Angeles area. The Rainforest Cafe argues that the nightclub atmosphere of the Amazon Bar & Grill caters to a different clientele from that of the family-oriented, mall-based Rainforest Cafe with a "substantial retail focus" and that, therefore, the two restaurants are not in direct competition. *See* Pl.Mem.Supp.Summ.J. at 19–20. This Court finds Rainforest Cafe's argument unpersuasive, however. Both the Amazon Bar & Grill and the Rainforest Cafe are rainforest-themed restaurants, and while each focuses on a different principal target group of consumers, members of both target groups undoubtedly frequent both establishments, causing the restaurants to be in direct competition. Therefore, this factor weighs in favor of Amazon Bar & Grill.

### 4. Intent to "Pass Off"

In traditional, forward confusion cases, the "intent to 'pass off'" factor involves a two-party inquiry addressing: (1) intent; (2) passing off. In such cases, even if sufficient evidence exists to find that an individual deliberately or intentionally copied the trade dress of another, such a finding does not mandate a determination that the alleged infringer attempted to pass off its product or trade dress as that of the other. To the contrary, if the alleged infringer clearly represents to the ultimate consumers that its products and trade dress are unique and distinct from those of the other, then a finding of "intent to 'pass off'" is inappropriate. *Children's Factory*, 160 F.3d at 495; *see also Libman Company v. Vining Industries, Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995) (finding that deliberate copying, absent intent to confuse, "does not mean that [the copier] was trying to confuse consumers").

In a reverse confusion case, however, the junior user, by definition, does not seek to capitalize on the good will of the senior user. Consequently, the above-set forth prong of the traditional forward confusion analysis addressing "passing off" is rendered moot in a reverse confusion case. Consequently, a modified inquiry with regard to "intent to 'pass off'"— focusing solely on intent—is applied. *Dream Team*, 958 F.Supp. at 1415.

In *Fisons*, the court found that the relevant inquiry to determine intent was whether, despite acting innocently, the alleged infringer was careless in not conducting proper research, to avoid infringement, prior to development of its trademark or trade dress. *Fisons*, 30 F.3d at 480 (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)). To answer said inquiry, *Fisons*

proposed a series of questions as to whether the defendant:

(1) conducted an adequate name search for other companies marketing similar goods under the mark in question; (2) followed through with their investigation when they found there were such companies; (3) considered the likelihood of confusion with other companies' marks and products; (4) attempted to contact companies using a similar mark, such as plaintiff; and (5) were careless in their evaluation of the likelihood of confusion.

*Dream Team,* 958 F.Supp. at 1415. *Dream Team* adopted the *Fisons* analysis, thus finding that the "intent" inquiry in cases involving reverse confusion is transformed into an inquiry not as to whether the alleged infringer "intended to 'pass off' " its product as that of the other but, instead, whether the alleged infringer intended to infringe.

Amazon Bar & Grill presents evidence that the Rainforest Cafe copied elements of the rainforest decor of the Amazon Bar & Grill. Schussler and two of Schussler's architects and a lighting consultant flew to Los Angeles to visit the Amazon Bar & Grill to "see if he [Schussler] could[ ] find any ideas he could borrow." Esades Aff., Ex. 5, Foley Dep. at 33. Shea Architect Thom Lasley testifies that he visited the Amazon Bar & Grill in Los Angeles because "he [Schussler] told us .. [t]hat it had a lot of the things that he was interested in building himself. It had the rocks, the greenery, the waterfalls." Esades Aff., Ex. 7, Lasley Dep. at 37. Lasley testifies that Schussler told Shea Architects that the Amazon Bar & Grill was "the closest to his concept that he had built in his house." *Id.* at 44. Furthermore, it is undisputed that Schussler paid for the Amazon Bar & Grill designer, Chris Zurga, to fly to Minnesota to assist with the design of the Rainforest Cafe's decor.

The Amazon Bar & Grill has also submitted an affidavit of Thea Tulloss, president of Tulloss Design, which was retained by Schussler to assist in the design of the logo for the Rainforest Cafe and other marketing materials. Tulloss testifies that after four meetings with Rainforest Cafe representatives, she ceased conducting business with the Rainforest Cafe because:

I did not believe that they were operating ethically. One aspect of Rainforest Cafe's business which concerned me was Mr. Schussler's practice of traveling to various restaurants and to conduct "research" into various aspects of the restaurants. He would then "incorporate" ideas, including artistic design and decor concepts from other restaurants into his Rainforest Cafe restaurant.

Tulloss Aff. at ¶ 4.

The Rainforest Cafe has moved to strike the affidavit of Tulloss on the grounds that it is vague and speculative and "irrelevant and not credibly probative of customer confusion," arguing, in part, that Tulloss fails to identify the restaurants that Schussler visited, the type of research he conducted, or the ideas or concepts that he incorporated into the Rainforest Cafe and, furthermore, there is nothing in the affidavit to indicate that Tulloss had first-hand knowledge of the behavior she describes.

As noted above, especially in a case of reverse confusion, evidence of deliberate copying is highly relevant. This Court therefore rejects Rainforest Cafe's argument that Tulloss' affidavit is irrelevant to the present inquiry. Furthermore, although this Court agrees that the Tulloss affidavit in its present form is vague and speculative, Amazon Bar & Grill asserts that Tulloss will be available to testify at trial. Def's. Opp. Pl's. Motion to Strike at 6 n. 7. In *Multi–Tech Systems, Inc. v. Hayes Microcomputer Products, Inc.,* 800 F.Supp. 825 (D.Minn.1992) the court stated that a party opposing summary judgment:

"must show that admissible evidence will be available at trial to establish a genuine issue of material fact." [citation omitted] Rule 56 of the Federal Rules of Civil Procedure, however, "does not require an unequivocal conclusion that the evidence will be admissible at trial as a condition precedent to its consideration

on a summary judgment motion, nor need the evidence be judged on the same basis as evidence at trial." [citation omitted].

*Id.* at 844–45. This Court finds that Amazon Bar & Grill has carried the above-articulated burden with respect to the Tulloss affidavit and that, though inadmissible in its current form, is nonetheless suitable for consideration at the summary judgment stage. Thus, Plaintiff's motion to strike the Tulloss affidavit is denied.

Thus, in consideration of the above evidence presented regarding the copying of certain elements of the Amazon Bar & Grill trade dress, this Court finds that, despite Amazon Bar & Grill's failure to present evidence that the Rainforest Cafe intended customers to believe erroneously that they were dining in the Amazon Bar & Grill, this factor, analyzed in the context of reverse confusion, weighs in favor of the Amazon Bar & Grill.

### 5. Incidents of Actual Confusion

As stated above, proof of actual confusion is only necessary if a party seeks an award of damages, and proof of a likelihood of confusion is sufficient to obtain injunctive relief. *See Woodsmith,* 904 F.2d at 1247 n. 5 (citation omitted). Therefore, while "[a]ctual confusion is not essential to a finding of trade dress infringement, ... it does provide positive evidence of a likelihood of confusion." *Empi,* 923 F.Supp. at 1168 (citing *Squirt-Co.,* 628 F.2d at 1091). Consumer survey evidence is often employed by claimants to demonstrate "incidents of actual confusion," *see, e.g. Stuart Hall,* 51 F.3d at 790, and "is probably the most accurate evidence of actual confusion," *Woodsmith,* 904 F.2d at 1249. Survey evidence, however, is not required to prove likelihood of confusion. *Id.; see also, Insty*Bit,* 95 F.3d at 671 (citation omitted); *Stuart Hall,* 51 F.3d at 790.

Colagreco testifies that when the Rainforest Cafe opened in Minneapolis, "there was quite a bit of confusion" and "we had people coming in asking if we were related or associated with this other rainforest-

themed restaurant that had opened in Minnesota." Esades Aff., Ex. 3, Colagreco Dep. at 146–47. Colagreco testifies that such comments were made personally to him, beginning in late 1994 and continuing through approximately June 1995, and that during that time he received "[m]aybe a dozen, 25, two dozen" such comments. *Id.* at 147–48.

John Catalano, manager of the Amazon Bar & Grill in Santa Monica, California from late 1992 until its closing, testifies that he "experienced numerous instances of confusion between the Amazon Bar & Grill and Rainforest Cafe." Catalano Aff. at ¶ 1. He asserts that in the winter of 1994, he was asked if the Amazon Bar & Grill "had gotten the idea for the decor ... from the Rainforest Cafe" and in 1995, he was asked by one customer if "the Amazon Bar & Grill was associated with the Rainforest Cafe" and by another if the restaurant was named Amazon Bar & Grill "because the location was too small to be a regular Rainforest Cafe location." *Id.* at ¶¶ 2–4.

Plaintiff has moved to strike the Catalano affidavit on the ground that the statements contained therein are inadmissible hearsay. While the nonmoving party at the summary judgment stage "need not produce evidence 'in a form that would be admissible at trial,' [citation omitted] ... the content or substance of the evidence must be admissible." *Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir.1995) (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir. 1994)).

In support of its motion to strike the Catalano affidavit, Plaintiff points this Court to the Eighth Circuit's findings in *Duluth News–Tribune v. Mesabi Publ'g Co.,* 84 F.3d 1093 (8th Cir.1996) and *Vitek Sys., Inc. v. Abbott Labs.,* 675 F.2d 190 (8th Cir.1982). In *Vitek,* the court found that testimony from plaintiff's employees during a bench trial that "customers had told them that they were confused by the similarity of the marks ... was hearsay in

nature and the district court properly gave it little weight." *Vitek,* 675 F.2d at 193. The court further noted that "the district court could refuse to credit the uncorroborated testimony of such interested persons." *Id.* In *Duluth News–Tribune,* the court found that evidence of customer confusion manifested through misdirected mail and phone calls failed to raise a genuine issue of fact because "vague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion,'" which is imperative to determine whether such evidence demonstrates mere inattentiveness rather than actual confusion. *Id.* at 1098.

*Duluth News–Tribune* and *Vitek,* however, are readily distinguishable from the present case. Unlike the evidence at issue in *Duluth News–Tribune,* the Catalano affidavit clearly sets forth the reason for the confusion demonstrated by Amazon Bar & Grill customers. Furthermore, the evidence presented by the Catalano affidavit does not allege that customers explicitly stated that they were confused by the similarity between the Amazon Bar & Grill and the Rainforest Cafe and, therefore, unlike the evidence in *Vitek,* is not presented to prove the truth of the matter asserted and is therefore not inadmissible hearsay. Instead, the Catalano affidavit presents statements and questions made that demonstrate rather than explicitly assert confusion.

Courts have found that such statements are relevant, admissible, non-hearsay evidence. In *Fun–Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993 (2d Cir.1997), the court found that the testimony of plaintiff's national sales manager that some retail customers complained because they believed that plaintiff was selling its product at a lower price to other retailers, when such lower priced product was in reality that of the alleged infringer, was admissible to demonstrate actual confusion because:

[t]here is no hearsay problem. Hearsay is an out-of-court statement admitted for the truth of the matter asserted. [citation omitted]. The testimony in question was not offered to prove that [plaintiff] was actually selling to some retailers at lower prices, but was probative of the declarant's confusion. Further, Federal Rule of Evidence 803(3) allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind. *Id.* at 1003–04.

The Rainforest Cafe also argues that even if the statements contained in the Catalano Affidavit were admissible, they do not demonstrate actual confusion for the purposes of this case. The Rainforest Cafe argues that questions as to whether the Amazon Bar & Grill was associated with or affiliated with the Rainforest Cafe and whether the Amazon Bar & Grill copied the Rainforest Cafe do not necessarily demonstrate confusion of source because inquiries from customers as to whether one company copied another and whether two companies are affiliated "[f]ar from revealing such confusion, . . . indicate that these customers, at least, had the difference in source clearly in mind." *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir.1980). Nonetheless, in cases of reverse confusion:

[m]any courts have found that customer inquiries to the senior user as to whether it was affiliated or connected with the junior user . . . are relevant, admissible and should be viewed in conjunction with other evidence of actual confusion.

*Dream Team,* 958 F.Supp. at 1415.

Accordingly, in light of the above, this Court denies Rainforest Cafe's motion to strike the Catalano Affidavit. Nonetheless, this Court finds that Catalano's statement that he also recalls "several instances when my staff was asked if the Amazon Bar & Grill was affiliated with the Rainforest Cafe," *Id.* at ¶ 5, is inadmissible double hearsay. The testimony of a witness that another individual told him or her a cus-

tomer made an inquiry as to the Amazon Bar & Grill's affiliation with the Rainforest Cafe is inadmissible hearsay, not falling within any exception. *See, e.g., Chisholm v. Foothill Capital Corporation*, 3 F.Supp.2d 925, 939 (N.D.Ill.1998); *Dull v. St. Luke's Hospital of Duluth*, 21 F.Supp.2d 1022, 1028 (D.Minn.1998) (finding that plaintiff's only evidence is premised on double hearsay because her claims of defamation are solely supported by her allegations that Parks informed her that Alioto made defamatory remarks to Dr. Hutchinson and Parks' statement is offered for the truth of the matter asserted); *Wells v. Shop Rite Foods, Inc.*, 474 F.2d 838, 839 (5th Cir.1973) (finding that the district court properly excluded as hearsay a witness' statement that several Shop Rite employees had told him that they had heard that plaintiff had been discharged for stealing). Furthermore, this Court also finds that Catalano's conclusion that the inquiry of a customer as to whether the Amazon Bar & Grill was so named because the location was too small to be a regular Rainforest Cafe location implied that "Amazon Bar & Grill was a smaller chain of restaurants associated with Rainforest Cafe," Catalano Aff. at ¶ 4, is merely speculative, lacks foundation, and is inadmissible.

Nonetheless, this Court determines that the admissible statements contained in the Catalano Affidavit when considered in conjunction with the statements evidencing confusion attested to by Colagreco in his deposition favor a determination that this factor weighs in favor of Amazon Bar & Grill.

### 6. Type of Product, Costs, and Conditions of Purchase

Relevant to the analysis of likelihood of confusion is "whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion," *Swisher Mower & Machine Co., Inc. v. Haban Manufacturing, Inc.*, 931 F.Supp. 645 (W.D.Mo. 1996), and, therefore, finding that a product is inexpensive and not the type of product regarding which consumers devote substantial time in making purchasing decisions weighs in favor of a conclusion that a likelihood of confusion exists. *Insty*Bit*, 95 F.3d at 672. Amazon Bar & Grill argues that both the Rainforest Cafe and the Amazon Bar & Grill offer such products. Plaintiff asserts, however, that unlike the purchaser of an inexpensive good, a restaurant patron will reflect on the establishment's decor and will be easily able to distinguish between restaurants competing with similar themes. *See* Pl.Mem.Supp. Summ.J. at 21.

This Court finds Plaintiff's argument unpersuasive. The analysis in *Buca* is instructive in this regard. In *Buca*, the court found that both restaurants at issue were "considered to be moderately-priced restaurants with similarly priced menu times" and noted that expert testimony in the case indicated that the degree of care likely to be exercised by restaurant patrons in such circumstances is "low." *Buca*, 18 F.Supp.2d at 1210. The court in *Buca* concluded, therefore, that "consumers would exercise a relatively low degree of care when purchasing either plaintiff's or defendants' products," and that the factor thus weighed in favor of the plaintiff. Similarly, this Court finds that, in the present case, this factor weighs in favor of Amazon Bar & Grill.

### 7. Conclusion

In light of the above analysis, this Court finds that a genuine issue of fact exists as to likelihood of confusion. Accordingly, as this Court also finds a genuine issue of fact as to whether the trade dress of Amazon Bar & Grill is nonfunctional and inherently distinctive, Plaintiff's motion for summary judgment with respect to allegations of trade dress infringement should be denied.

### D. Motion to Strike Campbell Expert Report

The Rainforest Cafe also moves to strike the Expert Witness Report of John A. Campbell, which details "the key factors

of the Amazon trade dress," expounds upon his conclusion that "[t]he trade dress of the Rainforest is confusingly similar to the Amazon trade dress" and calculates the damages from the alleged trade dress infringement. It is undisputed that while the report is signed by Campbell, the statement itself is unsworn, unverified, has not been stated to be true and correct, and has not been declared under the penalty of perjury.

Amazon Bar & Grill notes that courts routinely consider expert reports when deciding motions for summary judgment. *See, e.g., Mille Lacs Band of Chippewa Indians· v. State of Minnesota,* 952 F.Supp. 1362, 1381 (D.Minn.1997); *In re Potash Antitrust Litigation,* 954 F.Supp. 1334, 1381 (D.Minn.1997). Defendant does not cite this Court to any case, however, in which said expert reports considered by the courts were unsworn and unverified. To the contrary:

> [i]n *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970), the Supreme Court observed that an unsworn statement submitted in support of a motion for summary judgment did not meet the requirements of Fed.R.Civ.P. 56(e). Other courts have followed *Adickes* and declined to consider unsworn expert reports ... submitted in the summary judgment context.

*Sofford v. Schindler Elevator Corporation,* 954 F.Supp. 1459, 1462–63 (D.Colo.1997) (citation omitted). Furthermore, in *Lugue v. Hercules, Inc.,* 12 F.Supp.2d 1351 (S.D.Ga.1997), the court explicitly rejected the argument that unsworn expert reports should be considered for summary judgment because they were prepared pursuant to the mandatory disclosure requirements of Federal Rule of Civil Procedure 26(a). The court noted that "[b]ecause the two rules have differing purposes, the requirements to meet rules 56(c) and 56(e) are higher than that found in Rule 26(a)(2). Therefore, the unsworn expert reports, which may have been prepared in compliance with Rule 26(a)(2), will not be considered by the Court for purposes of sum-

mary judgment." *Lugue v. Hercules, Inc.,* 12 F.Supp.2d at 1358.

Thus, this Court will not consider, for the purposes of the summary judgment motion, the Campbell expert report. As the report complies with Rule 26(a), however, said report will not be stricken from the record at the present time for the purposes of presenting expert testimony at trial.

### 1. Motion to Strike Campbell Deposition

On November 24, 1998, Amazon Bar & Grill submitted the Campbell deposition to this Court. Plaintiff moves to strike the Campbell deposition, in part, on the grounds that the submission failed to comply with Local Rule 7.1(b)(2)(B), which requires that affidavits and exhibits filed as supporting documents in a dispositive motion be delivered to opposing counsel and the Court "[w]ithin 21 calendar days after service of the dispositive motion papers." The Campbell deposition was not submitted until November 24, 1998. Rainforest's motion for summary judgment was served on September 23, 1998.

The Amazon Bar & Grill asserts, however, that the Campbell deposition was submitted solely in response to Plaintiff's motion of October 29, 1998 to strike the Campbell expert report and that absent said motion, the deposition would not have been filed before this Court. Amazon Bar & Grill thus argues that the Campbell deposition was submitted pursuant to Local Rule 26.4(5), which provides that:

> individual discovery documents may be filed if the document is necessary to the decision of a pretrial motion. Such discovery documents shall be filed by the Clerk of Court only after the motion to which the documents relate has been filed and before the Court has ruled on the motion.

This Court finds that the submission of the Campbell deposition does not violate the Local Rules and will not exclude the deposition on said grounds.

Plaintiff also argues that Campbell's deposition testimony regarding customer confusion and other trade dress issues as well as his testimony as to damages suffered by Amazon Bar & Grill are inadmissible. This Court finds that the testimony as to damages is irrelevant for the present motion and therefore has not considered such testimony in resolving the matter now before the Court. Similarly, although the testimony of Campbell as to trade dress "issues" and customer confusion is potentially relevant to the present matter, this Court, without considering such expert testimony, has found sufficient grounds on which to base its finding that a genuine issue of fact exists as to whether the Rainforest Cafe committed trade dress infringement in the present case. Therefore, this Court has not considered the deposition testimony of Campbell in arriving at its present ruling. The Court will reserve judgment as to the foundation, relevance, and ultimate admissibility of such testimony until such matters are fully briefed prior to trial.

### III. Dilution of Trademark and Trademark Infringement

The Rainforest Cafe also moves for summary judgment on Counts II and III of Amazon Bar & Grill's counterclaim alleging trademark infringement and dilution of trademark against the Rainforest Cafe for use of the federally registered trademark "Amazon" on menu items, retail items, and advertisements. Although Counts II and III allege infringement and dilution through use in menu items, retail items, and advertisements, both parties limit their discussion of said counterclaims to allegations with respect to the Rainforest Cafe menu, and, therefore, this Court will do the same.[6]

■■■ Since June 5, 1997 when the Amazon Bar & Grill filed said counterclaims

against the Rainforest Cafe, the Rainforest Cafe has altered its menu so that "the current menu no longer has any item that is described with the name 'Amazon.' " Kohagen Aff. at ¶ 7; see Kohagen Aff., Ex. 2. The Rainforest Cafe argues that, as it has ceased using the term "Amazon" in its menu, the Amazon Bar & Grill's counterclaims in this regard should be dismissed. The Rainforest Cafe's argument in this regard is relevant only as to Amazon Bar & Grill's claim for injunctive relief against the Rainforest Cafe for dilution of trademark, however, as the Rainforest Cafe's elimination of the "Amazon" mark from its menu does not negate any damages suffered from prior infringing use of said mark. Furthermore, the Supreme Court has found that:

> [i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); *see also Minnesota Pet–Breeders, Inc. v. Schell & Kampeter, Inc.,* 843 F.Supp. 506, 512 (D.Minn.1993) (finding that "if there is a substantial possibility that the defendant will recommence the infringing use ... the court may, in its discretion, grant an injunction"). Thus, this Court rejects the argument that cessation of use renders Amazon Bar & Grill's counterclaim of trademark infringement and dilution of trademark moot.

■■■ The Rainforest Cafe further contends that Amazon Bar & Grill's claims

---

6. Rainforest asserts that the Amazon Bar & Grill has indicated that it no longer seeks damages for the alleged infringement but "has not yet formally dismissed its trademark infringement claims (including its claim for injunctive relief)." Pl's. Mem.Supp.Summ.J.

at 22. Amazon Bar & Grill has responded, however, that it continues to seek damages for infringing use by the Rainforest Cafe of the "Amazon" trademark in the context of its claim for trade dress infringement. Esades Aff. at ¶ 4.

for trademark infringement and dilution of trademark should be dismissed because Rainforest Cafe's use of the term "Amazon" is protected by the "fair use" doctrine, based on the principle that "no one should be able to appropriate descriptive language through trademark registration." *DowBrands, L.P. v. Helene Curtis, Inc.,* 863 F.Supp. 963, 967 (D.Minn.1994). 15 U.S.C. § 1115(a)(4) provides that a party accused of infringement of an incontestable, registered trademark may assert as a statutory defense:

> [t]hat the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business ... or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

The burden of proof rests on the defendant accused of infringement to establish the applicability of the "fair use" defense. *DowBrands,* 863 F.Supp. at 967. Furthermore, the "fair use" defense is unavailable if the alleged infringer used the term for trademark or service mark purposes. *Woodroast Systems, Inc. v. Restaurants Unlimited, Inc.,* 793 F.Supp. 906, 913 (D.Minn.1992) (citation omitted).

▌ In *DowBrands,* the court adopted the three-factor test set forth in *Quaker Oats* for the establishment of the "fair use" defense: (1) "use of the registered 'term or device' is 'otherwise than as a trade or service mark;'" (2) "the term or device is 'descriptive of' the defendant's goods or services;" and (3) the defendant is using the term or device "fairly and in good faith only to describe to users those goods and services." *DowBrands,* 863 F.Supp. at 969 (citing *Quaker Oats,* 978 F.2d at 951 (citation omitted)).

In *Woodroast Systems,* the court set forth a series of inquiries to be considered for the purposes of determining whether a term is used as a service mark:

> (1) Is the term used to attract public attention?

> (2) Is the term a prominent element of the package?

> (3) Is the phrase in a different type size or style?

> (4) Is the term set off?

> (5) Does a subordinate phrase actually describe the product being sold?

*Woodroast Systems,* 793 F.Supp. at 913–914 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 937–38 (10th Cir. 1983)).

The Rainforest Cafe menu at issue features five dishes entitled: Amazon Bruschetta, Amazon Flatbread, The Amazon Natural, The Amazon Burger, Amazon Mushroom Burger. Esades Aff., Ex. 52. Each title appears in large, boldface type and in small capital letters and features below the title a description of the various dishes in small, traditional font. The Rainforest Cafe's menu at issue also features a section entitled "Amazon flatbread," printed in boldface, italicized type and centered on the menu. Below the section heading, the menu lists four flatbread options.

▌ In *Woodroast,* the court found that prominent use of the allegedly infringing term on a menu "may be intended to attract consumers' attention rather than to merely describe food items." *Woodroast,* 793 F.Supp. at 914. This Court finds the use of the term "Amazon" seven times on the Rainforest Cafe's menu is sufficiently prominent to raise a genuine issue of fact as to whether the term was employed to attract customers' attention. As described above, the term also appears in a different type size and style as the title of menu items or a menu section and is thereby "set off" from other terms and descriptions on the menu. Furthermore, below each menu item title is a description of said item, and below the section title is a list of dishes included in said section. Based on the foregoing, this Court concludes that there exists a material fact dispute as to whether the Rainforest Cafe's use of the term "Amazon" in its menu constitutes a

service mark use and, accordingly, summary judgment based on the "fair use" defense should be denied.

■ Rainforest Cafe further contends that it is entitled to summary judgment as to Amazon Bar & Grill's counterclaims of trademark infringement and dilution of trademark because the use of the term "Amazon" in the Rainforest Cafe's menu presents no likelihood of customer confusion. The six above-articulated factors set forth in *Co–Rect* to determine likelihood of confusion in a trade dress infringement are applicable to the present analysis as well. *See Woodroast,* 793 F.Supp. at 915. The damages sought by Amazon Bar & Grill for infringing use by the Rainforest Cafe of the "Amazon" trademark are sought in the context of its larger claim for trade dress infringement, as "it is impossible to break out damages exclusively for use of the 'Amazon' Mark without considering damages resulting from the trade dress as well." Esades Aff. at ¶ 4. The Amazon Bar & Grill has thus acknowledged that the likelihood of confusion in the context of its trademark infringement and trademark dilution claims is necessarily intertwined with the more general analysis of whether a likelihood of confusion arises from the Rainforest Cafe's alleged infringement of Amazon Bar & Grill's trade dress, as the term "Amazon" is merely one element of the overall Amazon Bar & Grill trade dress. Thus, as this Court has found a genuine issue of material fact as to whether a likelihood of confusion arises with respect to the Rainforest Cafe's alleged trade dress infringement, so too this Court finds that a genuine issue of fact exists as to whether Rainforest Cafe's use of the term "Amazon" in its menu generates a likelihood of confusion.

## IV. Unfair Competition Claim

■ The Rainforest Cafe also moves for summary judgment on Amazon Bar & Grill's counterclaim in Count V of unfair competition asserted under the California Unfair Competition Statute, Cal.Bus. & Prof.Code § 17200 *et seq.* "An action for unfair competition under Cal.Bus. & Prof.

Code § 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the Lanham Act." *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1084 n. 1 (9th Cir.1998). Amazon Bar & Grill's claim of unfair competition is based on its claims of trade dress infringement and trademark infringement under the Lanham Act. Therefore, as this Court has found that genuine issues of material fact exists as to said claims, this Court also finds that a genuine issue of fact exists as to Amazon Bar & Grill's claim of unfair competition.

## V. Tortious Interference with Prospective Business Advantage

Amazon Bar & Grill further alleges in Count VI of its counterclaim that the Rainforest Cafe interfered with its prospective business advantage when it entered into the rainforest-themed restaurant concept, causing potential financial backers for Amazon Bar & Grill to refuse to go forward with their investments in the expansion plans of the Amazon Bar & Grill, specifically to locations in Orange County, New York City, New Jersey, and at the Liz Claiborne retail establishment on Fifth Avenue in New York City. Def's. Counterclaims at ¶ 71. The Rainforest Cafe moves for summary judgment as to said counterclaim.

Minnesota and California law both follow Restatement (Second) of Torts § 766B in providing a cause of action for wrongful interference with a prospective business advantage. *See, e.g., United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628 (Minn. 1982); *Quelimane Co., Inc. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 77 Cal. Rptr.2d 709, 960 P.2d 513 (1998). Section 766B provides that:

> One who *intentionally* and *improperly* interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relations.

*United Wild Rice,* 313 N.W.2d at 633 (citing Restatement (Second) of Torts § 766B (1979)) (emphasis added). The plaintiff carries the burden of proof of demonstrating that interference was caused by the defendant. *Id.* at 632.

Under Restatement (Second) of Torts § 766B, Comment d, "[t]he interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *see also* Restatement (Second) of Torts § 767, Comment d. Although, Amazon Bar & Grill has presented this Court with no evidence that the Rainforest Cafe was aware of the specific prospective contractual relationship with which it allegedly interfered, this Court finds that a genuine issue of fact exists as to whether the Rainforest Cafe was "substantially certain" that investors, formerly predisposed to finance the Amazon Bar & Grill would abandon such designs upon learning of the Rainforest Cafe's expansion.

■ Nonetheless, as competition is favored by the law, the law has established a special privilege for competitors:

> (1) one who intentionally causes a third person not to enter a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relations if:
> (a) the relation concerns a matter involved in the competition between the actor and the other and
> (b) the actor does not employ wrongful means and
> (c) his action does not create or continue an unlawful restraint of trade and
> (d) his purpose is at least in part to advance his interest in competing with the other.

*United Wild Rice,* 313 N.W.2d at 633 (citing Restatement (Second) of Torts § 768). Therefore, if the Rainforest Cafe is a competitor of the Amazon Bar & Grill, even if it intentionally interfered with the Amazon Bar & Grill's prospective business advantage, thereby causing loss of business and income, such interference was not improper if the above-described conditions were met.

This Court notes that, for the purposes of demonstrating likelihood of confusion, Amazon Bar & Grill has argued vigorously that Amazon Bar & Grill and the Rainforest Care are competitors. As set forth in detail above, this Court agrees that the two rainforest theme restaurants are competitors and has rejected the Rainforest Cafe's argument that because the Rainforest Cafe caters to a family-oriented clientele and the Amazon Bar & Grill caters primarily to an adult clientele, the restaurants are not in competition. Furthermore, in support of its motion for summary judgment as to Amazon Bar & Grill's counterclaim of tortious interference with prospective business advantage, the Rainforest Cafe argues, "competing for business does not constitute 'improper' behavior." Pl's. Mem.Supp.Summ.J. at 25. Thus, this Court finds that the Rainforest Cafe is properly covered by the privilege established by Restatement (Second) Torts for business competitors and that, therefore, even if the Rainforest Cafe intentionally interfered with the Amazon Bar & Grill's business advantaged, such action was not improper unless one of the four above-enumerated conditions was violated.

The Amazon Bar & Grill does not argue that the Rainforest Cafe's alleged tortious interference created unlawful restraint of trade. Furthermore, it is self-evident that, the relation—the potential expansion of Amazon Bar & Grill to other locations nationwide—concerns a matter involved in competition between the Amazon Bar & Grill and the Rainforest Cafe and that, any alleged interference with Amazon Bar & Grill's expansion would advance the interests of the Rainforest Cafe in competing with the Amazon Bar & Grill. Thus, this Court will examine the remaining prong of the analysis—whether the Rainforest Cafe used wrongful means to effectuate the alleged interference with the Amazon Bar & Grill's prospective business advantage.

This Court notes that because a formal economic relationship does not yet exist and damages are speculative when remedies are sought for tortious interference with prospective business advantage, "some wrongfulness apart from the impact of the defendant's conduct on that prospect should be required." *Quelimane Co., Inc. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998); *see also Witte Transportation Company v. Murphy Motor Freight Lines, Inc.,* 291 Minn. 461, 466, 193 N.W.2d 148 (1971). Amazon Bar & Grill seeks to establish such wrongfulness by reasserting its claims of trade dress and trademark infringement. This Court finds that as a genuine issue of fact exists as to whether the Rainforest Cafe engaged in the wrongful act of trade dress and trademark infringement, a genuine issue of fact exists as to whether wrongful means were used to intentionally interfere with Amazon Bar & Grill's business advantage.

To establish a claim of tortious interference with prospective business advantage, however, a claimant must also prove causation—but for the interference the alleged business advantage would have been obtained. *See North Central Co. v. Phelps Aero, Inc.,* 272 Minn. 413, 420, 139 N.W.2d 258, 263 (1965). The Amazon Bar & Grill has presented this Court with sufficient testimony from potential investors to create a genuine issue of fact as to whether, absent the expansion of the Rainforest Cafe, said investors would have provided financing for the expansion of the Amazon Bar & Grill.

### VI. Fraud

In Count VII of its counterclaim, the Amazon Bar & Grill alleges that when Schussler visited the Amazon Bar & Grill in October 1993, he fraudulently informed Colagreco that he was interested in the rainforest concept employed by the Amazon Bar & Grill because "he was going to build a theme park, an amusement park for children, and he was thinking about using a rainforest jungle theme for it." Esades Aff., Ex. 3, Colagreco Dep. at 303–304. Amazon Bar & Grill asserts that such fraudulent misrepresentation by Schussler induced Colagreco and Cuccio of the Amazon Bar & Grill to divulge information regarding their rainforest-themed restaurant that they might otherwise not have disclosed and that such disclosure damaged Amazon Bar & Grill.

The elements required to establish fraud or misrepresentation are:

(1) [a] false misrepresentation;

(2) knowledge or belief on the part of the person making it that the representation is false; or that there is an insufficient basis for making the statement;

(3) intention to induce plaintiff to act or rely upon the statement;

(4) justifiable reliance;

(5) damage.

*Carlock v. Pillsbury Company,* 719 F.Supp. 791 (D.Minn.1989).

Applying the above factors and considering this Court's finding that a genuine issue of fact exists as to whether the Rainforest Cafe infringed on the trade dress and trademark of the Amazon Bar & Grill, this Court finds that a genuine issue of material fact exists as to whether such statement by Schussler to Colagreco and Cuccio constitutes actionable fraud.

### VII. Motion to View

The Rainforest Cafe has moved this Court to view the Rainforest Cafe located at the Mall of America in Bloomington, Minnesota, the Rainforest Care located at South Coast Plaza in Costa Mesa, California and the Amazon Bar & Grill located in Sherman Oaks, California. In *Insty*Bit,* the court noted that while "'[v]isual inspection is permissible as an aid to a district court's determination of likelihood of confusion ... [it] should not constitute the sole basis for the conclusions made.' [citation omitted]. Thus, visual inspection may not replace an application of the *Co–Rect* factors in determining whether a likelihood of confusion exists." *Insty*Bit,* 95 F.3d at

671. Thus, this Court's visual impression of the Rainforest Cafe and the Amazon Bar & Grill is merely one factor among many that may be considered in the resolution of this matter. This Court is satisfied that the numerous photographs, videos, trade materials, deposition testimony, affidavits, legal documents, and other submissions on the record have provided this Court with appropriate knowledge of the parties' trade dress to resolve the issues presently before the Court. Therefore, the motion to view should be denied.

*VIII. Colagreco's Motion for Summary Judgment*

In 1991, Anthony Colagreco developed the concept for the Amazon Bar & Grill and began contacting potential investors. On October 5, 1991, Colagreco and seven other individuals entered into a Shareholders Agreement, which stated that:

> [t]he Shareholders are the owners of the issued and outstanding capital stock of AMAZON, in the amounts set forth below, ... which Shares constitute all of the issued and outstanding shares of AMAZON's capital stock.

Kelly Aff., Ex. 2. Of the initial 10,000 shares issued, Colagreco owned 750, while four investors owned 1,000 or more shares and three investors owned 500 or fewer shares. *Id.* The parties to the Shareholder Agreement agreed that Colagreco was the initial President, Treasurer, and Chief Financial Officer of Amazon. *Id.* In October 1992, the Amazon Bar & Grill opened in Santa Monica, California, and in June 1993, the second Amazon Bar & Grill opened in Sherman Oaks, California. Defs.' Joint Answer at ¶ 36. Colagreco states that the eight shareholders in Amazon stock were all "ownership partners" in the Amazon Bar & Grill in Santa Monica. Colagreco Dep. at 354.

On July 26, 1993, Colagreco filed articles of incorporation for Amazon, Inc. with the Secretary of State of California, and on July 28, 1993, Amazon, Inc. was legally incorporated under the laws of California. Kelly Aff., Ex. 3. On September 29, 1993,

the Board of Directors of Amazon, Inc., including Colagreco, executed a Unanimous Written Consent regarding the "issuance of shares for non-cash consideration," which provided for issuance of said shares in consideration for:

> [a]ll right, title, and interest [of the eight initial investors, including Colagreco] in and to the assets of that certain business known as AMAZON RESTAURANT, located at 307 Santa Monica Boulevard, Santa Monica, California, including all tangible and intangible property of same.

Kelly Aff., Ex. 4 at Ex. B. Subsequent to the incorporation of Amazon, Inc. in July 1993, Amazon, Inc. corporation operated the Amazon Bar & Grill restaurants. Scholfield 2d Aff., Ex. 2, Colagreco Dep. at 353–54.

On May 2, 1997, the Rainforest Cafe filed an amended complaint with this Court, joining as additional defendants Colagreco, Chamber Gas, Inc.—holder of the liquor license for and ownership or equivalent interest in the Amazon Bar & Grill, and Steven J. Cuccio—owner and operator of Chamber Gas, Inc. and shareholder in Amazon, Inc. Am.Compl. at ¶¶ 3–4. The Rainforest Cafe alleges "on information and belief" that said defendants "have joined forces with regard to some or all of the facts relevant to this complaint" and that Colagreco and Cuccio "are or have been business partners individually and through their companies for purposes and during times relevant to the subject matter of this suit." *Id.* at ¶ 5. On August 8, 1998, the Rainforest Cafe voluntarily dismissed without prejudice defendants Cuccio and Chamber Gas, Inc. pursuant to Rules 4(m) and 41(a)(1) of the Federal Rules of Civil Procedures for failure to properly serve said defendants within 120 days after filing of the complaint. Kelly Aff.Exs. 10, 11. Colagreco now moves for summary judgment on all claims against him as an individual defendant, arguing that, as the president and shareholder of

Amazon Bar & Grill, he is not a proper party to this case.

The Rainforest Cafe opposes Colagreco's motion for summary judgment on the grounds that a genuine issue of fact exists as to whether the issuance of Amazon, Inc. stock to the eight initial investors, including Colagreco, pursuant to the Unanimous Written Consent regarding the "issuance of shares for non-cash consideration," ever occurred and, furthermore, whether Amazon, Inc. received the corresponding capital contributions from the individuals involved. Pl's. Mem.Opp.Summ.J. at 3–4; see Scholfield 2d Aff., Ex. 6 at Ex. A. The Rainforest Cafe argues that, as a factual issue exists as to the formation and good standing of Amazon, Inc., a factual issue also exists as to whether Colagreco transferred all right, title, and interest in and to the assets of Amazon Bar & Grill to Amazon, Inc., including his interest in and right to the trademark and trade dress of the Amazon Bar & Grill. If such transference did not occur, the Rainforest Cafe argues, Colagreco retains the partnership rights he acquired through operation of the Amazon Bar & Grill as a partnership prior to its alleged incorporation on July 28, 1993. Under Minnesota law, a partnership is

> "an association of two or more persons to carry on as *co-owners* of a business for profit." It is essential to the existence of a partnership that there be a joint contribution to the enterprise and something in the nature of a community of interest.

*Nelson v. Seaboard Surety Company,* 269 F.2d 882, 886–87 (8th Cir.1959) (citation omitted). Such ownership and interest may include the trademark or trade dress of a partnership.

It is a generally accepted principle that "a corporation is an entity separate and distinct from its stockholders and the persons controlling it." *U.S. v. Martin,* 337 F.2d 171, 175 (8th Cir.1964) (citation omitted). Furthermore, "[t]he separate entity of a corporation will ordinarily be recognized ... [and] will be disregarded only under exceptional circumstances such as where the corporation serves no legitimate business purpose and is used only as in an intermediary to perpetrate fraud or promote injustice." *Id.* (citations omitted). The Rainforest Cafe does not argue that this case presents an example of "exceptional circumstances" in which the corporate entity Amazon, Inc. should be disregarded, but instead argues that a genuine issue exists as to whether such corporate entity was properly formed and in good standing.

■■■ This Court finds that as a genuine issue of fact exists as to whether Amazon, Inc. was properly incorporated and, therefore, a genuine fact issue also exists as to whether all Colagreco's personal rights and interests in the assets of the Amazon Bar & Grill prior to its incorporation were properly transferred upon incorporation, a genuine issue of fact exists as to whether Colagreco is a proper party to this case. Therefore, Colagreco's motion for summary judgment in this regard is denied.

### ORDER

Accordingly, based upon the foregoing and all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Rainforest Cafe's motion for summary judgment as to all counterclaims of Amazon Bar & Grill is DENIED;

2. Defendant Anthony Colagreco's motion for summary judgment in his individual capacity is DENIED;

3. Plaintiff Rainforest Cafe's motion to view the premises is DENIED;

4. Plaintiff Rainforest Cafe's motion to strike the affidavits of John Catalano and Thea Tulloss is DENIED;

5. Judgment with respect to Plaintiff Rainforest Cafe's motion to strike the expert report and deposition testimony of John Campbell is reserved until trial.